CHIEF JUDGE OF THE CIRCUIT COURT OF COOK COUNTY, Petitioner-Appellant, v. AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, COUNCIL 31, AFL-CIO, *et al.*, Respondents-Appellees.

First District (6th Division) Nos. 1—89—3422, 1—90—2960 cons.

Opinion filed August 16, 1991.

Margaret Kostopulos, of Office of Chief Judge of Circuit Court of Cook County, of Chicago, for petitioner.

Roland Burris, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Ann Plunkett-Sheldon, Assistant Attorney General, of Chicago, of counsel), for respondent Illinois State Labor Relations Board.

Cornfeld & Feldman, of Chicago (Jacob Pomeranz, of counsel), for respondent American Federation of State, County, and Municipal Employees.

JUSTICE LaPORTA delivered the opinion of the court:
Petitioner, the Chief Judge of the Circuit Court of Cook County, appeals from a decision and order of the Illinois State Labor Relations Board (Board) which held that certain clerical and administrative employees of the petitioner lacked confidential or supervisory status and, therefore, were not excluded from a proposed bargaining unit under

the Illinois Public Labor Relations Act (Ill. Rev. Stat. 1989, ch. 48, pars. 1603(c), (r)).

## STATEMENT OF FACTS

The record indicates that on April 7, 1989, the American Federation of State, County, and Municipal Employees Council 31 (AFSCME) filed a representation/certification petition with the Illinois State Labor Relations Board seeking to represent certain clerical and administrative personnel employed by the Chief Judge of the Circuit Court of Cook County. The proposed bargaining unit consisted of 317 clerical employees assigned to the Cook County Departments of Adult Probation, Juvenile Probation, Social Casework Services, and the Psychiatric Institute. All of these departments operate directly under the authority of the Chief Judge, but they do not share a uniform organizational or management hierarchy. The three probation departments have central offices in addition to satellite offices. The Psychiatric Institute has only one location.

The Chief Judge sought to exclude 47 employees from the proposed bargaining unit on the basis that they held either supervisory or confidential status. AFSCME conceded that seven employees should be excluded from the proposed bargaining unit.

Administrative hearings were held on the representation petition, and upon consideration of the evidence adduced, the hearing officer issued his recommended decision and direction of election which found that certain employees whose eligibility was challenged by the Chief Judge were not supervisory or confidential employees and, therefore, were to be included in the proposed bargaining unit. Thereafter, the Illinois State Labor Relations Board (Board) rejected the hearing officer's decision as to one employee, adopted the remainder of the hearing officer's recommended decision, and issued its decision and order which mandated that an election for representation be held among the employees in the proposed bargaining unit.

Although the Board ordered a representation election, its decision directed that the ballots of 11 employees be challenged. The Board remanded the case to the hearing officer to hold supplemental hearings to obtain more evidence on the confidential or supervisory status of those 11 individuals. The Chief Judge appealed this decision and order of the Board.

The election was conducted on November 9, 1989, and the ballots of the 11 specified employees were challenged. On November 20, 1989, AFSCME was certified as the exclusive representative of all

employees in the unit subject to the determination of the inclusion or exclusion of the 11 specified employees.

The supplemental hearing was held in January 1990, and the hearing officer later issued his supplemental decision which determined that 9 of the 11 employees specified were neither supervisory nor confidential and should, therefore, be included in the bargaining unit. The Board adopted the supplemental decision of the hearing officer, and the Chief Judge has also appealed the Board's decision on these nine employees.

THE ADULT PROBATION DEPARTMENT

The Adult Probation Department is under the general direction of John Robinson, the chief probation officer. Among the administrative staff are the finance coordinator systems manager, program director, and personnel director.

At the hearing, Michael Rohan, director of probation of court services, testified that the Adult Probation Department supervises approximately 28,000 adult offenders who have been convicted of various offenses and sentenced to terms of probation. The department operates with a staff of 600 employees, including 150 clerical and administrative workers. In addition to its main office, located at 2650 South California Avenue in Chicago, the department has 14 satellite offices at locations throughout Cook County.

The Chief Judge sought to exclude from the proposed bargaining unit Maureen Rafalin, Mary Grieshaber, Margaret Strocchia, Anna Plude, and Marlene O'Halleran, contending that they held confidential status.

The Chief Judge also sought to exclude Diane Nelson, Mary Parrilli, Edward Janega, Mildred Baez, Kay Daly, Yolanda DiSanto, Brenda Sharp, Carol Throw, and Irene Violente, contending that they held supervisory positions.

THE CONFIDENTIAL EMPLOYEES

Bruce Wisniewski testified that he is the personnel director of the Adult Probation Department and reports directly to John Robinson, the chief probation officer. Wisniewski is responsible for all areas of personnel, including interviewing, selection, and recommendation for hiring, and keeps all personnel files. Wisniewski sits at the bargaining table and participates in collective bargaining with AFSCME, the representative of the probation officers. He also assists in drafting responses which are to be discussed during collective bargaining.

Maureen Rafalin, the timekeeper for the Adult Probation Department, reports directly to Bruce Wisniewski, the personnel director. Rafalin monitors the daily time sheets of the department staff, prepares payroll forms for each pay period, and prepares a monthly report indicating the total sick time, vacation time, and personal time accrued by each employee. In addition, Rafalin processes all reference requests and employee pay garnishments and assists employees in filing for or effecting changes in any job-related benefits. Due to the nature of her job responsibilities, Rafalin has frequent access to the personnel files. Wisniewski testified that if AFSCME were to be certified as the bargaining representative for the clerical staff, Rafalin would be required to report to him the employee compensation and benefit schedules as well as quarterly or annual statistics.

The Chief Judge also sought to exclude from the bargaining unit Margaret Strocchia and Mary Grieshaber. Both Strocchia and Grieshaber work under the supervision of Daniel Abens, the director of financial control. Abens prepares, presents and monitors the budget for the department and oversees seven cashiers who collect any fines, costs, or restitution imposed by the courts.

Strocchia, the department purchaser, purchases, inventories, and distributes all the supplies for the Adult Probation Department. Strocchia also assists Abens in the preparation of the department budget and in the preparation of quarterly expenditure reports. Grieshaber is Abens' secretary and types and files all of his correspondence, including the department budget proposal, quarterly reports, and employee grievance and disciplinary documents involving the cashiers supervised by him.

Abens testified that if AFSCME were to be certified as the bargaining representative for the clerical staff, he would be involved in the collective bargaining process because of his budgetary responsibilities. Abens stated that if he were required to prepare a budget proposal for use in collective bargaining, he would be assisted by Strocchia and Grieshaber.

The Chief Judge also sought to exclude Anna Plude, the secretary to Robin Leaf, the program administrator. As program administrator, Leaf has developed personnel programs and performance appraisals for employees. Plude typed and filed all of these documents as well as other documents generated by Leaf in areas of training, communications, and general personnel policies. Plude also transcribes written employee performance evaluations prepared by Leaf. In addition, Plude acts as secretary to Abens if Grieshaber is absent.

The Chief Judge sought to exclude Marlene O'Halleran, the administrative assistant to James Cunningham, Jr., assistant chief probation officer. Cunningham is responsible for the daily operations of all caseload divisions in the Adult Probation Department. Cunningham has authority over 300 caseload officers, 40 supervisors, and seven deputy chief officers. In this capacity, Cunningham hears employee grievances and recommends disciplinary action for employees when appropriate. He also chairs the deputy chief meetings for the seven deputy chiefs at which they formulate department strategy and planning. Cunningham also fills in for John Robinson, chief probation officer, when Robinson is unavailable.

As administrative assistant to Cunningham, O'Halleran attends and takes the minutes of the deputy chief meetings. She types and files these minutes along with typing and filing memoranda on employee grievance and disciplinary hearings held by Cunningham. In addition, O'Halleran has complete access to all of Robinson's files and serves as Robinson's secretary when Gail Barta, a confidential employee, is absent.

### THE SUPERVISORY EMPLOYEES

The clerical staff of the Adult Probation Department is organized into three large groups. The deputy chief secretaries work directly for deputy chief probation officers and fall under the purview of the personnel director. The remaining support staff is directed by either Dawn Ahenfeld, the clerical manager of steno, or by Marcelino Gerena, the clerical manager of records. Ahenfeld reports to the personnel director, who reports to Robinson, the chief probation officer. Gerena reports directly to Robinson. The clerical staff is divided into small units based upon the work performed or the location served by that unit. Each unit is assigned one intermediate supervisor who oversees 8 to 13 clerical staff. The intermediate supervisors are responsible for the daily operation of the units and report to a clerical manager.

The Chief Judge sought to exclude nine employees in the Adult Probation Department, asserting that they held supervisory positions. Each of these employees is an intermediate supervisor and acts as the first-level supervisor to the line staff. Intermediate supervisors monitor time sheets and approve requests for vacation time, sick days, and personal days.

Intermediate supervisors are also responsible for regulating the work flow in their units by reviewing all projects and then assigning them to their employees on a *pro rata* basis. In addition, intermediate

supervisors collect and review monthly statistics on the quantity of work performed by the members of their unit. Intermediate supervisors seldom perform the same tasks as the employees within their unit and do so only when members of their unit are missing or production declines. Intermediate supervisors hold monthly meetings with the members of their units to discuss performance and any necessary changes or problems that might exist in the units. They also meet regularly with each other and with the clerical managers to discuss departmental or individual problems.

The Adult Probation Department has instituted a progressive discipline policy which requires a verbal reprimand followed by a written warning, suspension, and termination. The intermediate supervisors have authority to issue verbal reprimands and written warnings. The intermediate supervisors may, but are not required to, consult with the clerical managers before issuing either of these disciplinary measures.

When a situation requires proceeding beyond the written warning stage, department policy dictates that the intermediate supervisors make a written recommendation for further discipline to the appropriate clerical manager. The clerical manager then forwards that recommendation along with his or her own recommendation to Wisniewski and ultimately to Robinson, chief probation officer, who has the power to suspend employees.

Intermediate supervisors may also recommend promotion or transfer of the members of their unit. These recommendations are made to the appropriate clerical manager, then forwarded to Wisniewski, who makes the final decision. Employees may on their own initiative request transfers, and a recommendation by an intermediate supervisor does not necessarily mean that the employee will receive the promotion or transfer. Intermediate supervisors also have the authority to "dock" the pay of those employees who violate the tardiness policy.

Intermediate supervisors are paid at Grade 11 of the Cook County salary schedule, and the clerical staff are paid at Grades 5 through 9.

THE JUVENILE PROBATION DEPARTMENT

The Juvenile Probation Department has the responsibility of supervising juveniles, aged 16 and under, who have been sentenced to probation by a court or have become wards of the State as a result of abuse or neglect. The department has a main office, which is located at 1100 South Hamilton in Chicago, in addition to eight satellite offices. The Juvenile Probation Department employs between 580 and

600 people, including 140 clerical or support staff. The administrative head of the department is Judge Arthur Hamilton, the presiding judge of the juvenile court. Thomas P. Jones is the director of court services and reports directly to Judge Hamilton. Leonard Hohbein is assistant director of court services. The administrative groups of the department include the budget and accounts unit, the statistical unit, the clinical services unit, the legal unit, the personnel and training unit, and the screening and adjudication unit.

The Chief Judge sought to exclude Cynthia Pendleton, Thomas O'Brien, Mae Jakubiec, Johnnie Lumpkin, Jacquelyn Skinner, Wayne Nadasdy, Linda Aman, Jennifer Detwyler, Marilyn Wyatt, Elizabeth Lewis, Lucinda Bradley, Rosemary Woodard, Elaine Stancil, Joan Kozak, Diane Olvera, Vanessa House, and Sharon Williams, contending that they held confidential status.

The Chief Judge also sought to exclude Lois Vojcak, Louvenia Dixon, Dorothy Thomas, Leatrice Lamb, Marlene Kirk, Celestine Hill, Virginia DeBerry, and Marianne Cieply, asserting that they held supervisory positions.

### THE CONFIDENTIAL EMPLOYEES

The Chief Judge sought to exclude Cynthia Pendleton, secretary to Leonard Hohbein, assistant director of court services, from the proposed bargaining unit. The record reveals, however, that the hearing officer and the Board found that Pendleton was a confidential employee and, therefore, was excluded from the unit. Thus, it is unnecessary for this court to review the responsibilities of Pendleton.

The Chief Judge sought to exclude Thomas O'Brien, secretary to Dr. Robert E. Bussell, the director of clinical services for the juvenile division. The clinical service unit is responsible for evaluating children who are wards of the court because of abuse or neglect. These evaluations, done by the department's staff of two full-time psychiatrists, three full-time psychologists, and four full-time social workers, are used to determine the proper disposition for each child. Bussell is responsible for annual evaluations of the chief social worker, the chief psychologist, the office manager and his own secretary. He also supervises the department and deals with any disciplinary problems which might arise. When such problems arise, Bussell issues a written reprimand to the employee and sends a copy of the reprimand to the personnel unit.

As Bussell's secretary, O'Brien types all of his correspondence, including the employee evaluations and disciplinary reports.

The Chief Judge also sought the exclusion of Mae Jakubiec, Johnnie Lumpkin, and Jacqueline Skinner, assistants to Fannie Campbell, supervisor of the budget and accounts unit. Campbell prepares the payroll and annual budget for the juvenile court and administers its financial accounts. Jakubiec, Lumpkin, and Skinner monitor employee time sheets and prepare the payroll for the various units of the juvenile court.

The Chief Judge sought to exclude Linda Aman and Wayne Nadasdy, secretaries to John Browne, chief probation officer. Browne is the managing officer of the department and is responsible for the assignment of 300 probation officers. Browne also acts as the hearing officer in disciplinary and grievance matters involving the probation officers employed by the department. On occasion, Browne performs these same functions for the clerical staff if the director is absent. Browne has also been involved in an unfair labor practice case and a unit clarification petition filed before the State Labor Relations Board. As Browne's secretaries, Aman and Nadasdy type and file all of his correspondence, including resolutions and recommendations for disciplinary and grievance hearings and reports of the labor cases.

The Chief Judge sought to exclude each of the secretaries to the six deputy chief probation officers. The deputy chiefs supervise and direct the efforts of the probation officers and the clerical staff within their divisions. They evaluate the overall performance of their staff, resolve grievances, and handle disciplinary matters. The deputy chief probation officers are authorized to render discipline of up to a three-day suspension for probation officers and clerical staff.

As secretaries to the deputy chief probation officers, Jennifer Detwyler, Marilyn Wyatt, Elizabeth Lewis, Lucinda Bradley, Rosemary Woodard, and Elaine Stancil type and file all of the memoranda and correspondence generated by the deputy chief probation officers, including disciplinary reports.

The Chief Judge also sought to exclude Joan Kozak, Diane Olvera, Vanessa House, and Sharon Williams, secretaries to Linnie Parillo and Clotilda Kyle.

Linnie Parillo is the deputy chief probation officer in charge of the personnel and training unit within the Juvenile Probation Department. Parillo is responsible for the entire personnel unit and the stenographic and record library units. Although Parillo has also been designated by Thomas P. Jones, director of court services to represent the department in future collective bargaining with support staff, Jones' delegation of this responsibility was made without the knowledge or permission of the Chief Judge.

Parillo interviews candidates for both professional and support staff positions, directs and evaluates the training of all employees, and holds disciplinary hearings. She is authorized to discipline employees at all stages and regularly participates in that process. Parillo also participates in the grievance procedure, making recommendations for their resolution, and is authorized to transfer employees from one division to another. Parillo is also responsible for reviewing policies in the personnel manual and recommending changes or clarifications.

As secretary to Parillo, Olvera is responsible for typing and filing all correspondence, evaluations, and memoranda regarding training, disciplinary action, transfers and grievance hearings. She also types proposed changes in policies and procedures.

Williams is also the secretary to Parillo, and her duties are generally similar in nature to those of Ms. Olvera. Williams also performs secretarial duties for the training supervisors.

Clotilda Kyle is responsible for the personnel administration unit of the department and shares many of the same duties as Parillo. Kyle interviews candidates for employment, maintains the personnel files for all employees and is responsible for administering a series of tests to secretarial candidates.

Kyle also participates in the disciplinary process by conducting disciplinary hearings if verbal reprimands have not corrected the problem. Kyle is authorized to issue a three-day suspension, but further disciplinary action must be recommended to the director of court services. Kyle also reviews applications for promotions and transfers and then forwards the applications, along with written recommendations, to the director's office.

As secretaries to Kyle, Kozak and House administer tests to secretarial candidates, type the reports of disciplinary hearings, type recommendations for discipline beyond a three-day suspension, and type and file documents relating to employee promotions and transfers.

THE SUPERVISORY EMPLOYEES

Clerical staff of the Juvenile Probation Department report to clerical supervisors who in turn report to department heads. There is no office manager. The clerical supervisors all receive a higher rate of pay than those they supervise and are responsible for staffs ranging from 11 to 20 employees.

The clerical supervisors sought to be excluded by the Chief Judge are Marlene Kirk, Lois Vojcak, Louvenia Dixon, Dorothy Thomas, Leatrice Lamb, Celestine Hill, Virginia DeBerry, and Marianne Cieply.

The clerical supervisors monitor attendance, approve leave or vacation requests, assign work, conduct performance evaluations, and counsel staff on poor performance or attendance. In addition, they issue verbal warnings for disciplinary problems, recommend disciplinary action to their department head, and make recommendations for employee promotions and transfers. Although the supervisors may recommend salary upgrades for their employees, these recommendations do not necessarily mean that the employees will receive the pay increases, and some employees have received pay increases without the recommendation of a supervisor. The clerical supervisors will perform the same tasks as their subordinates when the units are understaffed. One clerical supervisor testified that she had little or no role in resolving grievances or in effecting the transfer of any employee from her unit.

THE SOCIAL CASEWORK SERVICES DEPARTMENT

The Social Casework Services Department provides services to adult offenders who have been found guilty of a misdemeanor and sentenced to court supervision for periods of one year or less. The department employs approximately 240 people, who work at the main office at 2650 South California Avenue and at 11 other satellite offices in the city and suburbs.

The Chief Judge sought to exclude Beverly Parker and Elisa Ortiz, contending that they held confidential status.

The Chief Judge also sought to exclude Lydia Rodriguez, Rosemary Hoak, and Ruby Looney, asserting that they held supervisory positions.

THE CONFIDENTIAL EMPLOYEES

The Chief Judge sought the exclusion of Beverly Parker, who provides clerical assistance to Sarah Alexander and Gloria Toney. Alexander is the training coordinator and manager of the support staff at the main office of the Social Casework Services Department. In addition to arranging training programs for the professional staff, Alexander functions as the manager of the support staff. In this capacity, she recommends salary upgrades for the employees in her unit and handles informal grievances. She is involved in hiring, firing, promotion, transfer, and suspension of employees by making recommendations directly to Chelsea Pollock, the director of the Social Casework Services Department. Alexander also supervises Gloria Toney, supervisor of the support staff, who is responsible for the daily operations of the support staff.

Beverly Parker types all of Alexander's recommendations for salary upgrades, promotions, and transfers as well as memoranda regarding employee hiring, discipline, and grievances. She also does occasional work for Toney and fills in for Alexander when she is out of the office.

The Chief Judge also sought the exclusion of Elisa Ortiz, secretary to Thomas Brennan, assistant director of the Social Casework Services Department. If a collective bargaining relationship were to be created, Brennan would be involved in any negotiations, and Ortiz would type all documents produced by Brennan for negotiating purposes.

In addition, Ortiz types for Shirley Jones, personnel coordinator. Jones recruits, interviews, disseminates applications, and checks references of candidates for employment. Jones also developed the present disciplinary policy and participates in and advises others on disciplinary matters. She develops policies and procedures for the personnel manual and is the equal employment opportunity compliance officer for the department. Jones will be primarily responsible for collective bargaining negotiations for the department.

Ortiz types all documents generated by Jones and would type all documents prepared by Jones for collective bargaining negotiations.

THE SUPERVISORY EMPLOYEES

The Chief Judge sought the exclusion of Lydia Rodriguez, Rosemary Hoak, and Ruby Looney, clerical supervisors for the Social Casework Services Department. Hoak, Rodriguez, and Looney all supervise clerical staff at more than one location and perform essentially similar duties. They participate in the hiring of new employees by receiving names of candidates from Jones, the personnel coordinator. They then interview the candidates and administer typing tests. Based on the test scores and interview results, the clerical supervisors make recommendations for hiring to the district supervisor. On occasion, the district supervisor also interviews the candidates.

The clerical supervisors also participate in the initial steps of the disciplinary process, which includes verbal counseling, followed by a verbal reprimand, and a written warning. If a clerical supervisor is not satisfied with the resolution of a disciplinary problem, she recommends to the district supervisor that further action be taken. Supervisors also assign work to their employees, keep time records on their staff, and approve requests for time off. Clerical supervisors are paid at Grade 11 of the Cook County salary schedule, and their clerical staff are paid at either Grade 5 or Grade 7.

## THE PSYCHIATRIC INSTITUTE

The Psychiatric Institute, located at 2650 South California Avenue, employs 52 people, including 17 clerical employees. The institute's professional staff conducts psychiatric examinations of defendants referred by the court to determine their competency to stand trial or to aid the court in sentencing. The administrative staff includes Dr. Robert Reifman, the director of the Psychiatric Institute, and Benjamin Pierce, the business manager of the institute.

The Chief Judge sought to exclude from the proposed bargaining unit Alma Holman, contending that she held confidential status.

### THE CONFIDENTIAL EMPLOYEE

Alma Holman is secretary to Benjamin Pierce. Pierce is responsible for all personnel matters, including payroll and monitoring of employee work hours. Pierce also has responsibility for the purchase of equipment, for the payment of bills, and for maintaining all personnel files. Pierce works with Dr. Reifman in preparing the budget and in effecting reclassifications and promotions of employees within the department.

Although Reifman has not had any meetings with the Chief Judge concerning collective bargaining since 1984 and has not been informed by the Chief Judge that he will have any role in future negotiations, Reifman stated that if the clerical staff of the institute were to be successfully organized by AFSCME, he and Pierce would be involved in the collective bargaining process. Pierce would assist Reifman in formulating proposals on economic and personnel issues.

As Pierce's secretary, Alma Holman types all of Pierce's correspondence, including that relating to the budget and to personnel matters. Holman has access to the personnel files as well as to budget information and reclassification documents stored in Pierce's office. If AFSCME were successful in its petition for certification, Holman would type any documents or proposals generated by Pierce for use in collective bargaining.

### ANALYSIS

■ Under the Illinois Public Labor Relations Act (Act) (Ill. Rev. Stat. 1989, ch. 48, par. 1601 *et seq.*), confidential and supervisory employees are excluded from the definition of a public employee for collective bargaining purposes. (Ill. Rev. Stat. 1989, ch. 48, pars. 1603(c), (r).) In the case at bar, the Board determined that certain employees

did not hold supervisory or confidential status and, therefore, were to be included within the proposed bargaining unit.

The role of a reviewing court on administrative review is limited to a determination of whether the administrative agency's decision was contrary to the manifest weight of the evidence. (*Murdy v. Edgar* (1984), 103 Ill. 2d 384, 469 N.E.2d 1085.) A decision is contrary to the manifest weight of the evidence only when, after viewing the evidence in a light most favorable to the Board, the court determines that no rational trier of fact could have agreed with the Board's decision. (*Agans v. Edgar* (1986), 142 Ill. App. 3d 1087, 492 N.E.2d 929.) The decision must be upheld where the record includes competent evidence to support it. (*Profice v. Board of Review of the Illinois Department of Labor* (1985), 135 Ill. App. 3d 254, 481 N.E.2d 1229.) A court of review may neither reweigh the evidence nor substitute its judgment for that of the trier of fact. (*Murdy*, 103 Ill. 2d 384, 469 N.E.2d 1085; *Gilliland v. Board of Education of Pleasant View Consolidated School District No. 622* (1977), 67 Ill. 2d 143, 365 N.E.2d 322.) An administrative decision should be reversed only where the opposite conclusion is clearly evident. *Madonia v. Houston* (1984), 125 Ill. App. 3d 713, 466 N.E.2d 648.

We initially determine whether the Illinois State Labor Relations Board erred in finding that certain employees lacked confidential status and were not exempt from the proposed bargaining unit.

■ Section 3(c) of the Act defines a confidential employee as follows:

> " 'Confidential employee' means an employee, who in the regular course of his or her duties, assists and acts in a confidential capacity to persons who formulate, determine and effectuate management policies with regard to labor relations or who in the regular course of his or her duties has authorized access to information relating to the effectuation or review of the employer's collective bargaining policies." Ill. Rev. Stat. 1989, ch. 48, par. 1603(c).

■ The purpose of the confidential exclusion is to prevent employees from having their loyalties divided between the employer, who expects confidentiality in labor relations matters, and the union, which may seek disclosure of management's labor relations material to gain an advantage in the bargaining process. (*City of Wood Dale*, 2 Pub. Employee Rep. (Ill.) par. 2043, No. S—RC—261 (ISLRB Sept. 5, 1986).) The exclusion avoids presenting the employer with a potential situation in which its negotiations strategies in collective bargaining would be prematurely exposed to the employees with whom it will

bargain. *West Harvey-Dixmoor School District No. 147*, 2 Pub. Employee Rep. (Ill.) par. 1054, No. 85—UC—0015—C (IELRB April 8, 1986).

In applying the language of the statute, the Board has developed alternative tests for determining when an employee holds confidential status. *Illinois State Appellate Defender*, 4 Pub. Employee Rep. (Ill.) par. 2036, No. S—RC—88—92 (ISLRB Aug. 25, 1988).

■ The first test is referred to as the "labor nexus" test. Under this test, whether employees hold confidential status depends upon whether they assist and act in a confidential manner to persons who formulate, determine and effectuate labor relations policies for the relevant departments. The person assisted by the allegedly confidential employee must perform all three of these functions with respect to the employer's labor relations policies in order to find that the assistant is a confidential employee. *City of Wood Dale*, 2 Pub. Employee Rep. (Ill.) par. 2043, No. S—RC—261 (ISLRB Sept. 5, 1986), aff'd *City of Wood Dale v. Illinois State Labor Relations Board* (1988), 165 Ill. App. 3d 640, 521 N.E.2d 103; *City of Burbank*, 1 Pub. Employee Rep. (Ill.) par. 2008, No. S—RC—45 (ISLRB June 6, 1985).

■ The second test is the "authorized access" test. Under this test, an employee holds confidential status if he or she has authorized access to information concerning matters arising from the collective bargaining process, such as information concerning the employer's strategy in dealing with an organizational campaign, actual collective bargaining proposals and the information relating to matters dealing with contract administration. *City of Wood Dale*, 2 Pub. Employee Rep. (Ill.) par. 2043, No. S—RC—261 (ISLRB Sept. 5, 1986).

A confidential employee must have access to confidential information specific to the collective bargaining relationship between labor and management. (*City of Wood Dale*, 2 Pub. Employee Rep. (Ill.) par. 2043, No. S—RC—261 (ISLRB Sept. 5, 1986).) Labor relations encompass ongoing or future collective bargaining negotiations and strategy, not general, though undoubtedly otherwise confidential department administration matters. (*Board of Education of Community Consolidated High School District No. 230 v. Illinois Educational Labor Relations Board* (1987), 165 Ill. App. 3d 41, 518 N.E.2d 713.) Mere access to "confidential" information concerning the general workings of the department or to personnel or statistical information upon which an employer's labor relations policy is based is insufficient to confer confidential status. (*Board of Education of Community Consolidated High School District No. 230*, 165 Ill. App. 3d 41, 518 N.E.2d 713.) An individual will be considered a confidential employee if that person

regularly handles or has access to information which, if divulged, would give bargaining unit members advanced notice of the department's policies in regard to labor relations. *West Harvey-Dixmoor School District No. 147*, 2 Pub. Employee Rep. (Ill.) par. 1054, No. 85—UC—0015—C (IELRB April 8, 1986).

■ A third test, referred to as the "reasonable expectation" test, has been developed for situations where there is no history of collective bargaining. In the absence of a collective bargaining relationship, an employee may be found to hold confidential status where the onset of collective bargaining would reasonably bring the individual confidential duties. (*City of Burbank*, 1 Pub. Employee Rep. (Ill.) par. 2008, No. S—RC—45 (ISLRB June 6, 1985).) In addressing the issue of confidential status in a department with no prior collective bargaining relationship, the Board considers the employee's and his or superior's future role in collective bargaining based upon the employee's current job duties and a reasonable expectation that the employee alleged to be confidential will in fact be performing confidential duties which meet the statutory definition with the onset of collective bargaining within the department. If this reasonable expectation test is met, the employee will be declared confidential and excluded from the bargaining unit. If the test is not met, the employee will be included within the unit. *City of Burbank*, 1 Pub. Employee Rep. (Ill.) par. 2008, No. S—RC—45 (ISLRB June 6, 1985).

THE ADULT PROBATION DEPARTMENT

Although a bargaining representative has been certified for the probation officers (sworn personnel) in the department and some bargaining has taken place, there is no collective bargaining agreement currently pending. Consequently, the hearing officer determined that department has no history of collective bargaining and applied the "reasonable expectation" test.

The evidence indicated, and the hearing officer found, that Maureen Rafalin is the department's timekeeper and reports to Wisniewski, the personnel director, who sits at the bargaining table when collective bargaining has taken place for the probation officers and has helped draft proposals and responses for use during bargaining. If AFSCME were to be certified as the representative of the clerical staff, Rafalin would be required to report to Wisniewski any personnel costs relevant to the collective bargaining, including health insurance, workers' compensation, and disability costs.

■ There is no evidence that Rafalin would make any recommendations or have advanced notice of the department's collective bar-

gaining proposals or that she would have access to information relating to the effectuation or review of the department's collective bargaining policies. Rafalin's responsibilities would be limited to supplying raw financial data to Wisniewski, who will use that data in future collective bargaining negotiations. Thus, the hearing officer correctly determined that Rafalin was not a confidential employee within the meaning of the Act. (*Avon School District 176*, 2 Pub. Employee Rep. (Ill.) par. 1072, No. 86—RC—0006—S (IELRB May 20, 1986); *West Harvey-Dixmoor School District No. 147*, 2 Pub. Employee Rep. (Ill.) par. 1054, No. 85—UC—0015—C (IELRB April 8, 1986).) In addition, the fact that Rafalin may have access to confidential information not related to labor relations does not indicate that she is a confidential employee. *Board of Education of Community Consolidated High School District No. 230 v. Illinois Educational Labor Relations Board* (1987), 165 Ill. App. 3d 41, 62-63, 518 N.E.2d 713, 726.

The evidence established that Margaret Strocchia and Mary Grieshaber work under the supervision of Daniel Abens, the director of financial control, who prepares, presents and monitors the budget for the department. Strocchia purchases, inventories, and distributes all the supplies for the department and assists Abens in the preparation of the budget and in the preparation of quarterly expenditure reports. Grieshaber is Abens' secretary and types and files all of his correspondence, including the department budget proposal, quarterly reports, and employee grievance and disciplinary documents involving the cashiers supervised by him.

Abens testified that if AFSCME were to be certified as the bargaining representative for the clerical staff, he would be assisted by Strocchia and Grieshaber in preparing a budget proposal for use in collective bargaining.

■ Abens does not formulate, determine and effectuate labor relations policies for the department. Strocchia's and Grieshaber's responsibilities would be limited to assisting Abens in furnishing a budget for use in future collective bargaining negotiations. There is no evidence that these two employees would have advance notice of the department's collective bargaining proposals or that they would have access to information relating to the department's collective bargaining policies. Thus, the hearing officer correctly determined that Strocchia and Grieshaber were not confidential employees within the meaning of the Act. (*Avon School District 176*, 2 Pub. Employee Rep. (Ill.) par. 1072, No. 86—RC—0006—S (IELRB May 20, 1986); *West Harvey-Dixmoor School District No. 147*, 2 Pub. Employee Rep. (Ill.) par. 1054, No. 85—UC—0015—C (IELRB April 8, 1986).) The fact

that Strocchia and Grieshaber may have access to confidential information which may be used in but is not related to labor relations does not indicate that they are confidential employees. *West Harvey-Dixmoor School District No. 147*, 2 Pub. Employee Rep. (Ill.) par. 1054, No. 85—UC—0015—C (IELRB April 8, 1986).

Anna Plude is the secretary to Robin Leaf, the program administrator, who has developed personnel programs and performance appraisals for employees. Plude typed and filed all of these documents as well as other documents generated by Leaf in areas of training, communications, and general personnel policies. Plude also transcribes written employee performance evaluations prepared by Leaf.

■ The handling of personnel functions is insufficient to establish that an employee is responsible for the development of labor relations policies. (*Board of Education of Plainfield Community Consolidated School District No. 202 v. Illinois Educational Labor Relations Board* (1986), 143 Ill. App. 3d 898, 908-09, 493 N.E.2d 1130, 1138.) Personnel-related duties, including hiring, firing, discipline, promotion, and participation in grievances procedures, involve only the effectuation of established policy, not its formulation and determination. *Board of Education of Plainfield Community Consolidated School District No. 202 v. Illinois Educational Labor Relations Board* (1986), 143 Ill. App. 3d 898, 908-09, 493 N.E.2d 1130, 1138.

There is no evidence that Leaf formulates, determines and effectuates labor relations policies for the department or that Leaf will do so with the onset of collective bargaining. Consequently, there is no evidence that Plude acts in a confidential capacity to a person who formulates, determines and effectuates labor relations policies for the department. The hearing officer correctly determined that Plude is not a confidential employee within the meaning of the Act. *Board of Education of Plainfield Community Consolidated School District No. 202 v. Illinois Educational Labor Relations Board* (1986), 143 Ill. App. 3d 898, 908-09, 493 N.E.2d 1130, 1138-39; *City Colleges of Chicago*, 4 Pub. Employee Rep. (Ill.) par. 1027, No. 87—RC—0009—C (IELRB Jan. 11, 1988).

Marlene O'Halleran is the administrative assistant to James Cunningham, Jr., assistant chief probation officer, who is responsible for the daily operations of all caseload divisions in the Adult Probation Department. Cunningham hears employee grievances and recommends disciplinary action for employees when appropriate. He also chairs the deputy chief meetings for the seven deputy chiefs at which they formulate department strategy and planning. Cunningham also

fills in for John Robinson, chief probation officer, when Robinson is unavailable.

As administrative assistant to Cunningham, O'Halleran attends and takes the minutes of the deputy chief meetings. She types and files these minutes along with typing and filing memoranda on employee grievance and disciplinary hearings held by Cunningham. In addition, O'Halleran has complete access to all of Robinson's files and serves as Robinson's secretary when Gail Barta, a confidential employee, is absent.

The hearing officer found that Cunningham's personnel functions do not establish that he formulates, determines, and effectuates labor relations policies for the department or that he will do so in the future. Consequently, there is no evidence that O'Halleran acts in a confidential capacity to a person who formulates, determines and effectuates labor relations policies for the department. *Board of Education of Plainfield Community Consolidated School District No. 202 v. Illinois Educational Labor Relations Board* (1986), 143 Ill. App. 3d 898, 908-09, 493 N.E.2d 1130, 1138; *City Colleges of Chicago*, 4 Pub. Employee Rep. (Ill.) par. 1027, No. 87—RC—0009—C (IELRB Jan. 11, 1988).

Mere access to confidential information which is not related to labor relations is insufficient to establish that an individual is a confidential employee. (*Board of Education of Community Consolidated High School District No. 230 v. Illinois Educational Labor Relations Board* (1987), 165 Ill. App. 3d 41, 62, 518 N.E.2d 713, 726; *West Harvey-Dixmoor School District No. 147*, 2 Pub. Employee Rep. (Ill.) par. 1054, No. 85—UC—0015—C (IELRB April 8, 1986).) In addition, O'Halleran's occasional substitution for Barta, a confidential employee, is insufficient to render O'Halleran a confidential employee because this substitution is not performed on a regular basis. (See *Board of Education of Plainfield Community Consolidated School District No. 202 v. Illinois Educational Labor Relations Board* (1986), 143 Ill. App. 3d 898, 908-09, 493 N.E.2d 1130, 1138.) Thus, the hearing officer correctly determined that she is not a confidential employee within the meaning of the Act.

THE JUVENILE PROBATION DEPARTMENT

The evidence established that Thomas O'Brien is secretary to Dr. Robert E. Bussell, the director of clinical services for the juvenile division, who is responsible for annual evaluations of the chief social worker, the chief psychologist, the office manager and his own secretary. Bussell also supervises the department and deals with any disci-

plinary problems which might arise. When such problems arise, Bussell issues a written reprimand to the employee and sends a copy of the reprimand to the personnel unit.

As Bussell's secretary, O'Brien types all of his correspondence, including the employee evaluations and disciplinary reports.

The hearing officer found that Bussell's managerial and personnel functions do not establish that he has any role in the development of the labor relations policies of the department. There is no evidence that Bussell formulates, determines and effectuates labor relations policies for the department or that he will do so in the future. Consequently, there is no evidence that O'Brien acts in a confidential capacity to a person who formulates, determines and effectuates labor relations policies for the department. The hearing officer correctly determined that O'Brien is not a confidential employee within the meaning of the Act. *Board of Education of Plainfield Community Consolidated School District No. 202 v. Illinois Educational Labor Relations Board* (1986), 143 Ill. App. 3d 898, 908-09, 493 N.E.2d 1130, 1138; *City Colleges of Chicago*, 4 Pub. Employee Rep. (Ill.) par. 1027, No. 87—RC—0009—C (IELRB Jan. 11, 1988).

Mae Jakubiec, Johnnie Lumpkin, and Jacqueline Skinner are assistants to Fannie Campbell, supervisor of the budget and accounts unit, who prepares the payroll and annual budget for the juvenile court and administers its financial accounts. Jakubiec, Lumpkin, and Skinner monitor employee time sheets and prepare the payroll for the various units of the juvenile court.

The hearing officer found that Campbell has no role in the development of labor relations policies for the employer or that she will do so in the future. Thus, there is no evidence that Campbell formulates, determines, or effectuates labor relations policies or that Jakubiec, Lumpkin, and Skinner act in a confidential capacity to any person who does so. In addition, these three employees do not have authorized access to any confidential information which relates to the employer's labor relations policies. See *Board of Education of Plainfield Community Consolidated School District No. 202 v. Illinois Educational Labor Relations Board* (1986), 143 Ill. App. 3d 898, 908-09, 493 N.E.2d 1130, 1138; *City Colleges of Chicago*, 4 Pub. Employee Rep. (Ill.) par. 1027, No. 87—RC—0009—C (IELRB Jan. 11, 1988); *Board of Education of Community Consolidated High School District No. 230 v. Illinois Educational Labor Relations Board* (1987), 165 Ill. App. 3d 41, 61-62, 518 N.E.2d 713, 726.

With the onset of collective bargaining, the responsibilities of these three employees would likely be limited to supplying raw finan-

cial data for use in future collective bargaining negotiations. Merely supplying raw financial data for use in negotiations is insufficient to establish that an individual is a confidential employee. (*Avon School District 176*, 2 Pub. Employee Rep. (Ill.) par. 1072, No. 86—RC—0006—S (IELRB May 20, 1986); *West Harvey-Dixmoor School District No. 147*, 2 Pub. Employee Rep. (Ill.) par. 1054, No. 85—UC—0015—C (IELRB April 8, 1986).) Consequently, the hearing officer correctly determined that these three individuals were not confidential employees within the meaning of the Act.

Linda Aman and Wayne Nadasdy are secretaries to John Browne, chief probation officer, who is the managing officer of the department and acts as the hearing officer in disciplinary and grievance matters. Browne has also been involved in an unfair labor practice case and a unit clarification petition filed before the State Labor Relations Board and has on occasion advised the director of court services on collective bargaining matters. As Browne's secretaries, Aman and Nadasdy type and file all of his correspondence, including resolutions and recommendations for disciplinary and grievance hearings and reports of the labor cases.

The hearing officer found that although Browne had occasionally been an advisor to the director of court services for collective bargaining, Browne was not on the employer's bargaining team and did not send the bargaining team any reports or documents which would have been typed by Aman or Nadasdy. The hearing officer concluded that Browne's advisory role did not establish that Browne is responsible for developing the employer's labor relations policies. Browne's personnel-related duties and his role in the disciplinary process do not indicate that an individual formulates, determines, or effectuates labor relations policies. (*Board of Education of Plainfield Community Consolidated School District No. 202 v. Illinois Educational Labor Relations Board* (1986), 143 Ill. App. 3d 898, 908-09, 493 N.E.2d 1130, 1138.) Consequently, the hearing officer correctly found that Aman and Nadasdy were not confidential employees within the meaning of the Act.

Jennifer Detwyler, Marilyn Wyatt, Elizabeth Lewis, Lucinda Bradley, Rosemary Woodard, and Elaine Stancil are the secretaries to the six deputy chief probation officers. The deputy chiefs supervise and direct the efforts of the probation officers and the clerical staff within their divisions, evaluate the overall performance of their staff, resolve grievances, and handle disciplinary matters. The deputy chief probation officers are authorized to render discipline of up to a three-day suspension for probation officers and clerical staff.

As secretaries to the deputy chief probation officers, Detwyler, Wyatt, Lewis, Bradley, Woodard, and Stancil type and file all of the memoranda and correspondence generated by the deputy chief probation officers, including disciplinary reports.

The hearing officer found that the deputy chief probation officers do not participate in collective bargaining and are not involved in developing labor relations policies. As previously noted, personnel-related duties and a role in the disciplinary process do not indicate that an individual formulates, determines, or effectuates labor relations policies. (*Board of Education of Plainfield Community Consolidated School District No. 202 v. Illinois Educational Labor Relations Board* (1986), 143 Ill. App. 3d 898, 908-09, 493 N.E.2d 1130, 1138.) Consequently, the hearing officer correctly found that these six individuals were not confidential employees within the meaning of the Act.

Joan Kozak, Diane Olvera, Vanessa House, and Sharon Williams are secretaries to Linnie Parillo and Clotilda Kyle.

Parillo is the deputy chief probation officer in charge of the personnel and training unit within the Juvenile Probation Department. Although she has been designated by Thomas P. Jones, director of court services, to represent the department in future collective bargaining with support staff, Jones' delegation of this responsibility was made without the knowledge or permission of the Chief Judge.

Parillo interviews candidates for both professional and support staff positions, directs and evaluates the training of all employees, and holds disciplinary hearings. She is authorized to discipline employees at all stages and regularly participates in that process. Parillo also participates in the grievance procedure, making recommendations for their resolution, and is authorized to transfer employees from one division to another. Parillo is also responsible for reviewing policies in the personnel manual and recommending changes or clarifications.

As secretary to Parillo, Olvera is responsible for typing and filing all correspondence, evaluations, and memoranda regarding training, disciplinary action, transfers and grievance hearings. She also types proposed changes in policies and procedures. Williams' duties are substantially the same as those of Olvera.

Clotilda Kyle is responsible for the personnel administration unit of the department and shares many of the same duties as Parillo. Kyle interviews candidates for employment, maintains the personnel files for all employees and is responsible for administering a series of tests to secretarial candidates. Kyle also participates in the disciplinary process and is authorized to issue a three-day suspension. Kyle

also reviews applications for promotions and transfers and then forwards the applications, along with written recommendations, to the director's office.

As Kyle's secretaries, Kozak and House administer tests to secretarial candidates, type the reports of disciplinary hearings, type recommendations for discipline beyond a three-day suspension, and type and file documents relating to employee promotions and transfers.

The hearing officer found that neither Parillo nor Kyle has any present involvement in collective bargaining with the sworn staff. They are not on the employer's bargaining team, and they do not formulate, determine, and effectuate labor relations policies for the department. Although Parillo and Kyle have been designated by Jones to represent the department in future collective bargaining with support staff, Jones' delegation of this responsibility was made without the knowledge or permission of the Chief Judge. Applying the "reasonable expectation" test, the hearing officer found further that even if Parillo and Kyle were to become members of the negotiating team, they would not have authority to initiate collective bargaining proposals without the prior approval of the director of court services and would be able to agree to the union's proposals only in trivial matters which did not involve the essentials of the operations of the department. The hearing officer made a factual finding that it did not appear that Parillo and Kyle would formulate, determine, and effectuate labor relations policies. Consequently, the hearing officer correctly determined that the secretaries to Parillo and Kyle were not confidential employees. *City of Burbank*, 1 Pub. Employee Rep. (Ill.) par. 2008, No. S—RC—45 (ISLRB June 6, 1985).

THE SOCIAL CASEWORK SERVICES DEPARTMENT

Beverly Parker provides clerical assistance to Sarah Alexander. Alexander, the training coordinator and manager of the support staff, arranges training programs for the professional staff and functions as the manager of the support staff. She recommends salary upgrades for the employees in her unit and handles informal grievances. She is involved in hiring, firing, promotion, transfer, and suspension of employees by making recommendations directly to the director.

Beverly Parker types all of Alexander's recommendations for salary upgrades, promotions, and transfers as well as memoranda regarding employee hiring, discipline, and grievances. She also fills in for Alexander when she is out of the office.

The hearing officer found that Alexander is not involved in the collective bargaining process and does not anticipate that she will

do so in the future. Personnel-related duties and a role in the disciplinary process do not indicate that an individual formulates, determines, or effectuates labor relations policies. (*Board of Education of Plainfield Community Consolidated School District No. 202 v. Illinois Educational Labor Relations Board* (1986), 143 Ill. App. 3d 898, 908-09, 493 N.E.2d 1130, 1138.) Consequently, the hearing officer correctly found that Parker was not a confidential employee within the meaning of the Act.

Elisa Ortiz is the secretary to Shirley Jones, personnel coordinator of the Social Casework Services Department. Chelsea Pollack, the director of the Social Casework Services Department, testified that he has delegated his role in future collective bargaining with the support staff to Jones, who will be primarily responsible for bargaining negotiations on behalf of the department. Ortiz would be required to type all documents produced by Jones for use in collective bargaining negotiations. Pollack did not, however, obtain prior approval from the Chief Judge to delegate his responsibility for collective bargaining negotiation. Ortiz is also secretary to Thomas Brennan, assistance director of the department, who, according to Pollack, will have a role in future collective bargaining.

The hearing officer found that neither Jones nor Brennan has any present responsibility for collective bargaining and that Pollack did not have permission from the Chief Judge to delegate his responsibility in these matters. The hearing officer found further that Pollack retains the right of final approval over any agreements reached with the union, subject to the approval of the Chief Judge. Applying the "reasonable expectation" test, the hearing officer concluded that neither Jones nor Brennan would have a significant role in collective bargaining and that Ortiz would not have authorized access to actual collective bargaining proposals. Mere access to confidential information which is not related to labor relations is insufficient to establish that an individual is a confidential employee. (*Board of Education of Community Consolidated High School District No. 230 v. Illinois Educational Labor Relations Board* (1987), 165 Ill. App. 3d 41, 61-62, 518 N.E.2d 713, 726; *West Harvey-Dixmoor School District No. 147*, 2 Pub. Employee Rep. (Ill.) par. 1054, No. 85—UC—0015—C (IELRB April 8, 1986).) Consequently, the hearing officer properly found that Ortiz is not a confidential employee.

THE PSYCHIATRIC INSTITUTE

Alma Holman is secretary to Benjamin Pierce, business manager of the institute, who is responsible for all business and personnel mat-

ters, including payroll, monitoring of employee work hours, maintaining personnel files, the purchase of equipment, and the payment of bills. Pierce works with Dr. Reifman in preparing the budget and in effecting reclassifications and promotions of employees within the department.

Reifman stated that if the clerical staff of the institute were to be successfully organized by AFSCME, he and Pierce would be involved in the collective bargaining process. Pierce would assist Reifman in formulating proposals on economic and personnel issues. Yet, Reifman has not had any meetings with the Chief Judge concerning collective bargaining since 1984 and has not been informed by the Chief Judge that he will have any role in future negotiations.

Holman types all of Pierce's correspondence, including that relating to the budget and to personnel matters. Holman has access to the personnel files as well as to budget information and reclassification documents stored in Pierce's office. Reifman stated that if AFSCME were successful in its petition for certification, Holman would type any documents or proposals generated by Pierce for use in collective bargaining negotiations.

The hearing officer found that Holman was a confidential employee based upon the "reasonable expectation" that she would be required to perform confidential duties in the future with the onset of collective bargaining. The Board rejected the hearing officer's determination and found that there was insufficient evidence to indicate that there was a "reasonable expectation" that Holman would perform confidential duties in the future. The Board concluded that the evidence was "too speculative" to justify the hearing officer's decision and noted that even if Reifman were to have a role in future negotiations, he has two personal secretaries, already excluded by stipulation as confidential employees, who can perform the necessary confidential work. The Board noted further that Pierce stated that he did not know what role, if any, he would play in future collective bargaining negotiations. The Board found that if Pierce was to have a role in future negotiations, it would likely consist only of supplying financial data. Thus, with the onset of collective bargaining, Holman's responsibility would likely be limited to typing and supplying raw financial data for use in collective bargaining negotiations.

▬▬ Merely supplying raw financial data for use in negotiations is insufficient to establish that an individual is a confidential employee. (*Avon School District 176*, 2 Pub. Employee Rep. (Ill.) par. 1072, No. 86—RC—0006—S (IELRB May 20, 1986); *West Harvey-Dixmoor School District No. 147*, 2 Pub. Employee Rep. (Ill.) par. 1054,

No. 85—UC—0015—C (IELRB April 8, 1986).) There is no evidence that Holman would have authorized access to or advance notice of the employer's labor relations proposals. Because Pierce does not formulate, determine, and effectuate labor relations policies, there is also no evidence that Holman's secretarial duties would qualify her as a confidential employee. Consequently, the Board correctly determined that Holman was not a confidential employee within the meaning of the Act.

We next consider whether the Illinois State Labor Relations Board erred in finding certain employees lacked supervisory status and were not exempt from the proposed bargaining unit.

Section 3(r) of the Act defines a supervisory employee as follows:

" 'Supervisor' is an employee whose principal work is substantially different from that of his subordinates and who has authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, direct, reward, or discipline employees, or to adjust their grievances, or to effectively recommend such action, if the exercise of such authority is not of a merely routine or clerical nature, but requires the consistent use of independent judgment. Except with respect to police employment, the term 'supervisor' includes only those individuals who devote a preponderance of their employment time to exercising such authority State supervisors notwithstanding." Ill. Rev. Stat. 1989, ch. 48, par. 1603(r).

■▇▇ Thus, the statute requires that an employee who holds a supervisory position must satisfy a four-part test. A supervisory employee must (1) perform principal work substantially different from that of his subordinates; (2) have authority in the interest of the employer to perform or effectively recommend action with regard to at least 1 of the 11 specified managerial functions; (3) consistently exercise independent judgment in the performance of the enumerated function; and (4) devote a preponderance of his time to exercising this authority. Ill. Rev. Stat. 1989, ch. 48, par. 1603(r); *Village of Wheeling v. Illinois State Labor Relations Board* (1988), 170 Ill. App. 3d 934, 524 N.E.2d 598, *aff'd sub nom. City of Freeport v. Illinois State Labor Relations Board* (1990), 135 Ill. 2d 499, 554 N.E.2d 155; *City of Burbank*, 1 Pub. Employee Rep. (Ill.) par. 2008, No. S—RC—45 (ISLRB June 6, 1985).

▇▇ This court has held that State employees must also meet the "preponderance of time" requirement to qualify for supervisory status under the Act. (*American Federation of State, County and Municipal Employees, Council 31 v. Chief Judge of the Circuit Court*

(1991), 209 Ill. App. 3d 283, 568 N.E.2d 139.) Although the hearing officer and the Board determined the supervisory status of the challenged employees without considering this requirement of the Act, we deem it unnecessary to remand the cause for application of the "preponderance of time" requirement because we find that the Board's decisions based upon the other three requirements were correct.

### THE ADULT PROBATION DEPARTMENT

The Chief Judge sought to exclude nine employees in the Adult Probation Department, asserting that they held supervisory positions. Each of these employees is an intermediate supervisor who monitors employee time sheets, approves requests for vacation time, sick days, and personal days, assigns projects on a *pro rata* basis, collects and reviews monthly statistics on the quantity of work performed by the members of their unit.

The hearing officer found that these employees satisfied the first prong of the four-part test because their principal work is substantially different from that of their subordinates and they perform the same tasks as the employees within their unit only when members of their unit are missing or production declines.

The hearing officer found, however, that these employees did not satisfy the third prong of the test because they did not perform any of the 11 enumerated managerial functions with independent judgment.

The evidence established that although the intermediate supervisors have authority to recommend upgrades for subordinates, the decision to upgrade is made by the personnel director, and the intermediate supervisors cannot effectively recommend promotions or rewards. The supervisors assign work on a *pro rata* basis which is a routine function which does not require the exercise of independent judgment. (*City of Peru*, 2 Pub. Employee Rep. (Ill.) par. 2040, No. S—RC—165 (ISLRB Sept. 5, 1986).) The approval of vacation and sick leave requests is a routine, clerical function which does not involve the use of independent judgment. *City of Carbondale*, 3 Pub. Employee Rep. (Ill.) par. 2044, No. S—RC—264 (ISLRB June 2, 1987).

Although the intermediate supervisors may give a verbal reprimand followed by a written warning, further discipline must be recommended to the appropriate clerical manager. Only the chief probation officer has the power to suspend employees. The hearing officer determined that the issuance of reprimands does not require the exercise of independent judgment and that because their authority is restricted to the first two levels of disciplinary action, there was in-

sufficient evidence that these supervisors have the power to adjust employee grievances. (See *City of Carbondale*, 3 Pub. Employee Rep. (Ill.) par. 2044, No. S—RC—264 (ISLRB June 2, 1987).) Consequently, the hearing officer correctly determined that the intermediate supervisors did not meet the third requirement of the statute and, therefore, could not be classified as supervisory employees within the meaning of the Act. *City of Freeport*, 135 Ill. 2d 499, 554 N.E.2d 155.

THE JUVENILE PROBATION DEPARTMENT

The clerical supervisors sought to be excluded by the Chief Judge are Marlene Kirk, Lois Vojcak, Louvenia Dixon, Dorothy Thomas, Leatrice Lamb, Celestine Hill, Virginia DeBerry, and Marianne Cieply.

The clerical supervisors monitor attendance, approve leave or vacation requests, assign work, conduct performance evaluations, and counsel staff on poor performance or attendance. In addition, they issue verbal warnings for disciplinary problems, recommend disciplinary action to their department head, and make recommendations for employee promotions and transfers. Although the supervisors may recommend salary upgrades for their employees, these recommendations do not necessarily mean that the employees will receive the pay increases, and some employees have received pay increases without the recommendation of a supervisor. The clerical supervisors have little or no role in resolving grievances or in effecting the transfer of any employee from the unit.

The hearing officer found that these employees satisfied the first prong of the four-part test because their principal work is substantially different from that of their subordinates and they perform the same tasks as the employees within their unit only when members of their unit are missing.

Yet, the hearing officer determined that these employees did not satisfy the third prong of the test because they did not perform any of the 11 enumerated managerial functions with independent judgment.

The evidence established that the clerical supervisors. have no authority to hire or to recommend hiring, nor are they involved in recommending layoffs, recalls, or transfers. They have never recommended a suspension or discharge of an employee, nor have they ever adjusted employee grievances. The hearing officer concluded that there was insufficient evidence in the record to determine whether any such recommendation would be effective.

The clerical supervisors have no authority to discipline, but may only discuss problems with employees and, if the problems continue,

to document them and inform the personnel department. The hearing officer noted that there was no evidence indicating the effectiveness of these reports.

These employees have no authority to promote or reward employees. Although they evaluate their employees annually and can recommend a salary increase, there was no evidence that these recommendations are effective.

 The clerical supervisors do not exercise independent judgment in directing their subordinates because their management of the employees in their units is limited to a fair distribution of work and to evaluation of the work for accuracy and completeness.

Because these duties involve routine functions which do not require the exercise of independent judgment, the hearing officer properly determined that the clerical supervisors are not supervisors within the meaning of the Act. *City of Freeport*, 135 Ill. 2d 499, 554 N.E.2d 155; *City of Carbondale*, 3 Pub. Employee Rep. (Ill.) par. 2044, No. S—RC—264 (ISLRB June 2, 1987); *City of Peru*, 2 Pub. Employee Rep. (Ill.) par. 2040, No. S—RC—165 (ISLRB Sept. 5, 1986).

### THE SOCIAL CASEWORK SERVICES DEPARTMENT

The Chief Judge sought the exclusion of three clerical supervisors for the Social Casework Services Department. Lydia Rodriguez, Rosemary Hoak, and Ruby Looney all supervise clerical staff at more than one location and perform essentially similar duties. They interview applicants for employment and administer typing tests. Based on the test scores and interview results, the clerical supervisors make recommendations for hiring to the district supervisor.

The clerical supervisors also participate in the initial steps of the disciplinary process, which includes verbal counseling, followed by a verbal reprimand, and a written warning. If a clerical supervisor is not satisfied with the resolution of a disciplinary problem, she recommends to the district supervisor that further action be taken. Supervisors also assign work to their employees, keep time records on their staff, and approve requests for time off.

The hearing officer found that these employees satisfied the first prong of the four-part test because their principal work is substantially different from that of their subordinates.

Yet, the hearing officer determined that these employees did not satisfy the third prong of the test because they did not perform any of the 11 enumerated managerial functions with independent judgment.

The hearing officer found that the authority of the clerical supervisors to direct their subordinates is limited to the assignment of work on a *pro rata* basis so as to achieve a balanced workload among the employees. The approval of requests for leave are routinely and invariably granted.

The hearing officer found further that their participation in the hiring of new employees is limited to interviews of applicants and administration of a typing test which is either passed or failed by the applicant. Moreover, the hearing officer noted that because there is always a shortage of qualified candidates for the entry-level positions, every applicant who passes the typing test and does not have a criminal record is hired. Thus, the clerical supervisors have no opportunity to exercise independent judgment in the hiring or recommendation of applicants.

Because these duties involve routine functions which do not require the exercise of independent judgment, the hearing officer properly determined that the clerical supervisors are not supervisors within the meaning of the Act. *City of Freeport*, 135 Ill. 2d 499, 554 N.E.2d 155; *City of Carbondale*, 3 Pub. Employee Rep. (Ill.) par. 2044, No. S—RC—264 (ISLRB June 2, 1987); *City of Peru*, 2 Pub. Employee Rep. (Ill.) par. 2040, No. S—RC—165 (ISLRB Sept. 5, 1986).

In the case at bar, the evidence in the record supports the determinations of the Board, and the Board's decisions are not against the manifest weight of the evidence.

For the foregoing reasons, the decisions of the Illinois State Labor Relations Board are affirmed.

Affirmed.

McNAMARA and EGAN, JJ., concur.