THE VILLAGE OF WHEELING, Petitioner, v. THE ILLINOIS STATE LABOR RELATIONS BOARD *et al.*, Respondents.

First District (4th Division)   No. 87—1561

Opinion filed May 12, 1988.

Seyfarth, Shaw, Fairweather & Geraldson, of Chicago (James Baird and Gary S. Kaplan, of counsel), for petitioner.

Cornfield & Feldman, of Chicago (J. Dale Berry, of counsel), for respondent Wheeling Firefighters Association.

Katten, Muchin & Zavis, of Chicago (Howard L. Bernstein and Frank J. Saibert, of counsel), for *amicus curiae* Illinois Fire Chiefs Association.

JUSTICE LINN delivered the opinion of the court:

The Wheeling Firefighters Association, a labor union (the union), petitioned the Illinois State Labor Relations Board (Board) for certification as the collective bargaining representative of certain employees of the Wheeling fire department. The union sought certification in a bargaining unit composed of all full-time fire department employees, including those employees holding the rank of lieutenant.

Following an administrative hearing, a hearing officer issued a recommended decision, in which he found the proposed bargaining unit to be appropriate and directed an election within the bargaining unit for representation. On review, the Board adopted the recommended decision of the hearing officer and upheld his direction of election. Following the representation election, the Board certified the union as the exclusive bargaining agent for the unit. The Board subse-

quently ordered the Village of Wheeling (Village) to bargain with the unit. The Village seeks administrative review of the Board's order, contending that the lieutenants are supervisory employees and, therefore, should not have been included in the bargaining unit.

We affirm the order of the Board.

BACKGROUND

A

The record shows that the Wheeling fire department consists of 41 employees: the chief, 1 captain, 1 fire inspector, 6 lieutenants, 30 fire fighter/paramedics, 1 fire fighter, and 1 secretary. (We will refer to the fire fighter/paramedics and fire fighters collectively as fire fighters, as did the hearing officer.) Four of the six lieutenants are also certified as paramedics. The fire department follows a paramilitary structure with a chain of command from the Chief down through the captain and lieutenants to the fire fighters.

The fire department maintains two fire stations. The main station, Station Number 24, stands adjacent to the Village's municipal offices. The main station contains the administrative offices of the chief, the captain, and the fire inspector, as well as a library and conference room. The substation, Station Number 23, stands approximately 1½ miles from the main station. The floor space in each station is allocated similarly, including a lieutenant's office in each station. At the main station, the lieutenant's bunk is located in his office. At the substation, however, the lieutenant sleeps in the bunkroom with the fire fighters because the lieutenant's office is too small to accommodate a bunk.

The lieutenants and fire fighters are continuously on duty at both stations. They are assigned to a 24-hour shift that begins and ends at 7 a.m.; each shift is on duty for 24 hours and then is off-duty for 48 hours. The normal staffing level for each shift at both stations is five fire fighters and one lieutenant. The minimum staffing requirement at the main station is five and the minimum at the substation is three. In both instances, the lieutenants are counted for the purpose of meeting the minimum staffing requirement.

The chief of the Wheeling fire department is Bernhardt Koeppen. He was appointed by the village manager with the approval of the board of trustees. Chief Koeppen reports to the village manager regularly. The chief typically works from 8 a.m. to 4:30 p.m., Monday through Friday. As head of the fire department, the chief is responsible for its administration. He directly supervises the captain, the fire

inspector, and the secretary, all of whom report to him. The chief usually does not deal directly with either the lieutenants or the fire fighters; rather, he generally relies on the chain of command. The chief rarely responds to emergency calls. When he does respond, he usually does not take an active command role.

Directly below Chief Koeppen in the chain of command is Captain Ralph Perricone. Like the chief, the captain works from 8 a.m. to 4:30 p.m., Monday through Friday. The captain assumes the chief's responsibilities in the chief's absence. He seldom visits either station on weekends. His duties include assisting the chief in the daily administration of the fire department and in the planning and directing of fire fighting and emergency rescue services. As the department's training officer, the captain establishes training procedures that the lieutenants use to train the fire fighters. Captain Perricone also prepares periodic activity and productivity reports as well as yearly budget proposals. The captain additionally meets with building and sprinkler system contractors to approve building design specifications and sprinkler systems.

The six lieutenants in the fire department report directly to Captain Perricone; he evaluates them every six months. Each lieutenant serves as shift commander at one of the two stations; five or six fire fighters report directly to him. The lieutenant is responsible for the condition of the station, equipment, and personnel assigned to the shift. He also must enforce department regulations and ensure that the fire fighters under him are adequately trained and prepared to perform in an emergency.

During the daytime hours, the fire fighters and lieutenants perform various tasks while waiting for emergency calls. The lieutenant assigns the tasks, based upon a system agreed to by the fire fighters on that shift. The fire fighters usually inspect the emergency equipment and perform housekeeping and maintenance tasks. The lieutenants perform administrative work, e.g., complete reports and special assignments, and prepare for training exercises written by the captain. The fire fighters and lieutenants together perform the training exercises. After 4:30 p.m., the fire fighters and lieutenants eat dinner and relax at the station. The lieutenant may spend several evening hours completing paperwork in his office.

Emergency responses account for approximately 5% of the fire department's shift time. They involve primarily fighting fires and handling medical emergencies. The lieutenant assigns himself and each fire fighter to specific positions on the emergency apparatus. At an emergency call, the lieutenant is usually the engine company officer.

A "company" refers to the personnel assigned to a vehicle, generally three persons to the engine and two to the ambulance. A "company officer" is the person in charge of the people on the vehicle.

The first engine company officer to arrive at the scene is in command. The lieutenant determines and directs a plan for extinguishing the fire. The lieutenant and fire fighters then work together to extinguish the fire. The captain is at the scene only when a building is on fire, and assumes command only when the flames are showing. When an emergency requires both a fire engine and an ambulance, the engine company officer is responsible for the overall scene, but the senior paramedic, regardless of rank, has authority over patient care.

In addition to the lieutenants, six fire fighters serve as acting shift commanders (ASCs). The ASC acts as the lieutenant in his absence, assuming all of the lieutenant's duties in and around the station. The chief appoints ASCs based on a fire fighter's ranking on the promotion eligibility list for the position of lieutenant and based also on seniority. The three highest-ranked fire fighters are appointed to serve as ASCs for their respective stations and shifts. To fill the remaining positions, the chief selects the most senior fire fighters at the station on the shift.

## B

The union petitioned the Board for certification as a collective bargaining representative, pursuant to section 9(a)(1) of the Illinois Public Labor Relations Act (IPLRA) (Ill. Rev. Stat. 1985, ch. 48, par. 1609(a)(1)). The union sought certification of a bargaining unit composed of the fire fighters, lieutenants, and the fire inspector. (Ill. Rev. Stat. 1985, ch. 48, par. 1609(b).) Following a representation hearing, a hearing officer issued a recommended decision in which he concluded that the proposed bargaining unit was appropriate. In addition to the above facts, the hearing officer determined that the lieutenants were not "supervisors" as defined by section 3(r) of the IPLRA. (Ill. Rev. Stat. 1985, ch. 48, par. 1603(r).) Since the lieutenants were not supervisors, who may not be in the same bargaining unit as nonsupervisors (Ill. Rev. Stat. 1985, ch. 48, par. 1609(b)), the hearing officer concluded that the lieutenants may be included in the unit.

On review, the Board adopted the recommended decision of the hearing officer and upheld his direction of election. The Board agreed with the hearing officer that the lieutenants were not supervisors within the meaning of the IPLRA. The Board reached this conclusion after applying its own test, derived from the statute, to the lieutenants in the instant case. The Board, therefore, upheld the hearing of-

ficer's direction of election.

The Board then conducted a representation election within the bargaining unit. The majority of the unit voted in favor of the union. The Board thereafter certified the union as the exclusive bargaining agent for the unit. The Village later committed a technical refusal to bargain with the unit, prompting the Board to order the Village to bargain. The Village petitioned this court to review the Board's order to bargain, pursuant to section 11(e) of the IPLRA. Ill. Rev. Stat. 1985, ch. 48, par. 1611(e).

OPINION

I

A

■ We note at the outset our standard of review. Section 11(e) of the IPLRA provides that our review of the Board's order be in accordance with the Administrative Review Law (Ill. Rev. Stat. 1985, ch. 110, par. 3—101 *et seq.*). (Ill. Rev. Stat. 1985, ch. 48, par. 1611(e).) The Administrative Review Law provides that our review extend to all questions of law and fact presented by the entire record. The statute limits our review to the record before us; we may not hear new or additional evidence. The statute additionally mandates that the "findings and conclusions of the administrative agency on questions of fact shall be *prima facie* true and correct." Ill. Rev. Stat. 1985, ch. 110, par. 3—110.

■ Courts have construed these statutory provisions to mean that, on administrative review, it is not a court's duty to weigh evidence. Rather, the court's function is to ascertain whether the findings and decision of the agency are against the manifest weight of the evidence. An administrative agency decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. (*Rockford Township Highway Department v. Illinois State Labor Relations Board* (1987), 153 Ill. App. 3d 863, 872, 506 N.E.2d 390, 395.) Specifically, bargaining unit issues are questions of fact within the purview of the Board. Further, even in mixed questions of law and fact, requiring an examination of the legal effect of a given set of facts, the Board's resolution of such questions is to be upheld if reasonable, consistent with the IPLRA, and based on findings supported by substantial evidence. 153 Ill. App. 3d at 875, 506 N.E.2d at 397.

■ We additionally note that a court of review need not defer to

the conclusion of the fact finder in construing a statute. However, when an administrative agency is the finder of fact as well as the interpreter of law, a reviewing court is in a less than plenary position. (*Ranquist v. Stackler* (1977), 55 Ill. App. 3d 545, 550, 370 N.E.2d 1198, 1202.) Courts will give substantial weight and deference to an interpretation of an ambiguous statute by the agency charged with the administration and enforcement of the statute. While an administrative agency's interpretation of a statute is not binding on the court, it expresses an informed source for ascertaining the legislative intent. A significant reason for this deference is that agencies can make informed judgments upon the issues, based upon their experience and expertise. *Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n* (1983), 95 Ill. 2d 142, 152-53, 447 N.E.2d 295, 300; *Ranquist*, 55 Ill. App. 3d at 550-51, 370 N.E.2d at 1203.

## B

■ The Village first argues that Federal case law on the exclusion of supervisors from collective bargaining units, under the National Labor Relations Act (NLRA) (29 U.S.C. §141 *et seq.* (1982)), should guide us in reviewing the Board's order. We disagree. The Village is correct that the IPLRA closely parallels the NLRA. (*Rockford Township Highway Department v. Illinois State Labor Relations Board* (1987), 153 Ill. App. 3d 863, 874-75, 506 N.E.2d 390, 397.) When our State legislature enacts a statute based on a Federal statute, the State statute can presumably be interpreted in conformity with Federal court decisions rendered prior to its adoption. A presumption arises that the legislature adopted the statutory language it did with knowledge of the construction previously enunciated in the Federal courts. *Laborer's International Union of North America, Local 1280 v. Illinois State Labor Relations Board* (1987), 154 Ill. App. 3d 1045, 1050, 507 N.E.2d 1200, 1204.

■ However, the converse of these principles is also true. Since a presumption arises that the State legislature had knowledge of the Federal courts' interpretation of the Federal statute, a court can derive the legislative intent not only from the language that the legislature actually adopted, but also from the language that it changed or omitted. The fact that the State legislature specifically declined to adopt a section of the model Federal statute evidences an intent to achieve a result different from that announced by the Federal courts. 154 Ill. App. 3d at 1050, 507 N.E.2d at 1204.

Both the NLRA and the IPLRA generally exclude supervisors from collective bargaining units. (29 U.S.C. §152(3) (1982); Ill. Rev.

Stat. 1985, ch. 48, pars. 1603(n), 1609(b).) However, the NLRA defines supervisors as follows:

> "The term 'supervisor' means any individual having authority, in the interest of the employer, to hire, transfer, suspend *** other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment." 29 U.S.C. §152(11) (1982).

Section 3(r) of the IPLRA defines supervisors as follows:

> " 'Supervisor' is an employee *whose principal work is substantially different from that of his subordinates* and who has authority, in the interest of the employer, to hire, transfer, suspend *** employees or to adjust their grievances, or to effectively recommend such action if the exercise of such authority is not of a merely routine or clerical nature, but requires the consistent use of independent judgment. Except with respect to police employment, the term 'supervisor' includes only those individuals *who devote a preponderance of their employment time to exercising such authority,* State supervisors notwithstanding." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 48, par. 1603(r).

■■ The IPLRA contains a more stringent definition of a supervisor than that contained in the NLRA. Under the NLRA, an employee who exercises authority with independent judgment is a supervisor. Under the IPLRA, however, the employee's principal work must be substantially different from that of other employees. Additionally, the employee must devote a preponderance of his or her time to exercising the authority described in the section. This plain language on the face of the statute evidences a legislative intent to achieve a result different from that reached by Federal courts under the NLRA. Therefore, we agree with the Board that "although [NLRB] precedent is useful in analyzing the individual's performance of the enumerated functions, its usefulness is limited by the Act's two critical distinctions." *City of Burbank*, 1 Pub. Employee Rep. (Ill.) par. 2008, at 48, case No. S—RC—45 (Illinois State Labor Relations Board June 6, 1985).

II

We now reach the merits of the Village's appeal. The Board upheld the hearing officer's decision that the fire department lieutenants were not supervisors as defined by the IPLRA. They were, therefore,

appropriate members of the bargaining unit. The Village contends that the Board's decision was contrary to the statute and against the manifest weight of the evidence.

■ Section 3(r) of the IPLRA establishes a four-prong test that an employee must meet to be deemed a supervisor and excluded from a bargaining unit. The employee must: (1) perform principal work substantially different from that of his or her subordinate, (2) have authority in the interest of the employer to perform one or more of the 11 listed functions or to effectively recommend such action, (3) consistently use independent judgment in the performance of the listed functions, and (4) devote a preponderance of his or her employment time to exercising this authority. The employee must meet all four criteria. (Ill. Rev. Stat. 1985, ch. 48, par. 1603(r); *City of Burbank*, 1 Pub. Employee Rep. (Ill.) par. 2008, at 48.) This section additionally provides that company officers are employees unless they meet the statutory test for supervisors. If company officers meet the test, then they are deemed supervisors.

The hearing officer found that the lieutenants did not meet all four criteria. On review, the Board modified and adopted the hearing officer's recommended decision. The Board addressed only the first prong of the test. The Village contends that the Board applied its own erroneous standard in construing the first prong of the test. The Village also contends that the hearing officer's findings as to the other prongs of the test were against the manifest weight of the evidence.

## A

We initially address the second and third prongs of the test. The second prong requires the lieutenants to have authority, in the interest of the employer, to perform one or more of the 11 named supervisory functions, or to effectively recommend such action. These functions are to hire, transfer, suspend, lay off, recall, promote, discharge, direct, reward, discipline, or to adjust grievances. The third prong requires the lieutenants to consistently use independent judgment in performing these functions.

■ The hearing officer found that the lieutenants possess authority only to direct and discipline the fire fighters, although their authority to discipline is minimal. He additionally found that the lieutenant's power to direct does not require the use of independent judgment, because of the highly proceduralized and regimented nature of the fire department. Thus, the hearing officer found that the lieutenants satisfied the second and third prongs of the test only with respect to discipline. After reviewing the entire record, we cannot say

that the opposite conclusion is clearly evident.

## B

We next address the fourth prong of the test. The fourth prong requires the lieutenants to devote a preponderance of their employment time to exercising their supervisory authority. The Board has construed this prong to require an employee to spend the most significant allotment of his or her time to exercising the authority. In other words, an employee must spend more time exercising the named statutory functions than performing any other function. *City of Burbank*, 1 Pub. Employee Rep. (Ill.) par. 2008, at 49.

Applying this test to the lieutenants' employment time, the hearing officer found that the lieutenants did not spend a preponderance of their employment time exercising authority. The hearing officer would have reached this conclusion even if he were to find that their "employment time" included only the hours of scheduled activities, 7 a.m. to 4:30 p.m., plus any additional time spent responding to emergencies.

■■ After reviewing the entire record, we conclude that the hearing officer's conclusion was reasonable, consistent with the IPLRA, and based on findings supported by substantial evidence. The hearing officer found that the only supervisory function that the lieutenants exercised was to discipline the fire fighters. It is abundantly clear from this record that the lieutenants do not spend more time disciplining the fire fighters than performing any other function. We uphold the finding of the hearing officer.

An employee must meet all four statutory criteria to be deemed a supervisor. Since the lieutenants did not meet the fourth prong of the test, we uphold the Board's conclusion that they do not fall within the statutory definition of a supervisor. The lieutenants, therefore, are properly included in the bargaining unit with the fire fighters.

## C

We could end our opinion at this point. We choose, however, to address the Village's argument concerning the first prong of the statutory definition of a supervisor. The Village argues that the Board applied an erroneous standard in construing the first prong of the test, which requires that the alleged supervisor perform principal work substantially different from that of the subordinate.

In applying the principal work requirement, the Board has held that it will look to the "nature and essence" of the employee's job duties, rather than the amount of time spent at those duties, to deter-

mine whether the duties are substantially different from those of the subordinate. (*City of Burbank*, 1 Pub. Employee Rep. (Ill.) par. 2008, at 49.) This requirement is easily met where the duties of the alleged supervisor are obviously and visibly different from those of the subordinate. *E.g., City of Peru*, 2 Pub. Employee Rep. (Ill.) par. 2040, at 272, case No. S—RC—165 (Illinois State Labor Relations Board Sept. 5, 1986) (full-time shift commanders).

However, where the alleged supervisor performs functions facially similar to the subordinate, the Board determines whether the alleged supervisor's authority renders the nature and essence of the work substantially different. In other words, the Board determines whether the "alleged supervisor's employment is more similar to, than dissimilar from, that of the rank and file. Where the community of interest thus lines up with the rank and file, [the alleged supervisor] will be included in their collective bargaining unit notwithstanding the exercise of supervisory functions." *Village of Alsip*, 2 Pub. Employee Rep. (Ill.) par. 2038, at 260, case No. S—RC—303 (Illinois State Labor Relations Board Sept. 5, 1986).

In the instant case, the Board applied the community of interest test in *Village of Alsip* to fire fighters. The Board first determined that the nature and essence of the lieutenants' work is facially similar to that of the fire fighters, "to maintain their readiness to respond to emergency situations and to be part of the 'team' that does so." Because of this facial similarity, the Board then determined that the lieutenants and the fire fighters share a community of interest unique to fire fighters, which is protecting life and property by fighting fires and handling medical emergencies. Because the lieutenants' duties were more similar to, than dissimilar from, the fire fighters' duties, the Board found that the lieutenants were more aligned with the fire fighters than with management. The Board concluded that the lieutenants' principal work was not substantially different from that of the fire fighters. The lieutenants, therefore, did not meet the statutory definition of supervisor.

The Village argues that the Board's community of interest standard is irrelevant to the first prong of the statutory test. The Village further argues that the Board's standard would require an alleged supervisor to work at cross-purposes to the subordinate before he could be excluded from a bargaining unit.

We disagree. The thrust of the Board's entire analysis is simply to realistically look at what the alleged supervisor actually does, in its entire context. Looking at the lieutenants in this case, in the specific context of fire fighting, one clearly sees that they more

closely resemble the fire fighters than either the captain or the fire chief. Of course, the lieutenants need not work against the fire fighters to be deemed management. Rather, the nature and essence of the lieutenants' job must be visibly different from that of the fire fighters. See, *e.g., City of Peru*, 2 Pub. Employee Rep. (Ill.) par. 2040, at 272 (full-time shift commanders).

■ This interpretation of the first prong of the test is reasonable and well within the province of the Board, which is charged with the responsibility of administering and enforcing the IPLRA. We hold that the Board's conclusion was reasonable, consistent with the IPLRA, and based on substantial evidence. We uphold the Board's conclusion that the lieutenants failed the first and fourth prongs of the statutory definition of a supervisor. The lieutenants, therefore, were properly included in the fire fighters' collective bargaining unit.

For the foregoing reasons, the order of the Illinois State Labor Relations Board is affirmed.

Affirmed.

JIGANTI, P.J., and McMORROW, J., concur.