(No. 72467.—

THE CHIEF JUDGE OF THE CIRCUIT COURT OF COOK COUNTY, Appellant, v. AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, COUNCIL 31, AFL-CIO, *et al.*, Appellees.

*Opinion filed December 4, 1992.*

510

BILANDIC, J., took no part.

HEIPLE, J., joined by MILLER, C.J., concurring in part and dissenting in part.

Margaret Kostopulos and Robin Shartiag, of Chicago, for appellant.

Jacob Pomeranz, of Cornfield and Feldman, of Chicago, for appellee American Federation of State, County and Municipal Employees, Council 31, AFL-CIO.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Daniel N. Malato, Assistant Attorney General, of Chicago, of counsel), for appellee Illinois State Labor Relations Board.

JUSTICE CUNNINGHAM delivered the opinion of the court:

The issues presented in this appeal are, simply put, whether certain employees of the chief judge of the circuit court of Cook County (employer) should be excluded from the bargaining unit because they are either supervisory or confidential employees. The Illinois State Labor Relations Board (Board), after extensive hearings, included these contested employees in the bargaining unit. The appellate court confirmed the decision of the Board, without dissent. (218 Ill. App. 3d 682.) Pursuant to our Rule 315 (134 Ill. 2d R. 315), we granted the employer's petition for leave to appeal the decision to this court, and now affirm the appellate court. We also remand this cause to the Board for a further determination as to the individuals challenged as confidential employees.

On April 7, 1989, the American Federation of State, County and Municipal Employees, Council 31 (AFSCME), filed a representation/certification petition with the Board. This petition sought to have AFSCME named the representative of approximately 312 clerical and administrative personnel employed by the employer. Those personnel which AFSCME sought to represent are employed in one of four departments, all operated under the direction of the chief judge of Cook County. These departments are adult probation, juvenile proba-

tion, social casework services and the Psychiatric Institute.

Initially, the employer sought to exclude 47 employees from the proposed bargaining unit, alleging that these employees all possessed either supervisory or confidential status. After extensive hearings and after a great deal of evidence had been adduced on August 29, 1989, the hearing officer recommended that two of the challenged employees should be excluded, as they held confidential status, and three more employees should be excluded, as they are supervisors within the meaning of the statute. The hearing officer included the remainder of the challenged employees in the bargaining unit. In its written order, the Board accepted most of the hearing officer's recommended decision but rejected his recommendation as to one employee and further ordered an election for representation be held. Moreover, the Board determined that not enough evidence was present in the record to support the hearing officer's recommendation as to 11 of the employees and ordered further fact-finding proceedings as to these employees to be conducted. Because this supplemental hearing was required, the Board ordered that these 11 employees should vote in the election but that their ballots should be challenged.

The certification vote took place on November 9, 1989. On November 20, 1989, AFSCME was certified as the exclusive representative of these clerical employees.

The supplemental hearing was conducted in January 1990. On July 3, 1990, after this hearing, the hearing officer issued a decision, excluding 2 of the 11 employees from the unit, finding they were confidential employees, but including the remaining nine employees. The Board adopted these findings.

The employer appealed the decision of the Board to the appellate court, contesting 47 of the employees included in the bargaining unit. In a lengthy opinion, the

appellate court confirmed the Board's decision, finding, in essence, that it was not against the manifest weight of the evidence. 218 Ill. App. 3d 682.

The employer then petitioned this court for leave to appeal this decision, pursuant to Supreme Court Rule 315 (134 Ill. 2d R. 315). In the brief filed by the employer in the present appeal, the employer only addressed whether 18 employees should be excluded from the bargaining unit as confidential or supervisory employees. At oral argument, the employer conceded that the employer would waive the right to address any employees save those mentioned in the brief. The reason for this waiver was, allegedly, that because the employer had been working with this bargaining unit in place for almost three years, the employer had grown comfortable with the fact that the office was able to function while these employees were represented by AFSCME. This concession requires us to limit our inquiry into this matter to 18 employees, unlike the cumbersome analysis required of the appellate court.

A further recitation of the facts surrounding this case is not necessary. The appellate opinion has ably summarized the lengthy factual disposition as relevant to this appeal and we adopt this statement, repeating only those facts necessary to our consideration of these contested employees.

The issue, as previously noted, is whether these 18 employees should be excluded from the bargaining unit because they hold confidential or supervisory status. See Ill. Rev. Stat. 1989, ch. 48, pars. 1603(c), (n), (r).

The issues which we are asked to address, however, must be viewed in light of the standard of review by which we are bound.

The Illinois Public Labor Relations Act (Ill. Rev. Stat. 1989, ch. 48, par. 1609(i)) provides that judicial review of the Board's decisions must be made according to the

514

provisions of the Administrative Review Law (Ill. Rev. Stat. 1989, ch. 110, par. 3—101 *et seq.*). The Administrative Review Law tells us that we must presume the findings and conclusions of the agency (in this case, the Board) on questions of fact are *prima facie* true. (Ill. Rev. Stat. 1989, ch. 110, par. 3—110.) Therefore, this court may not interfere with the Board's expertise and authority unless that authority is exercised in an arbitrary and capricious manner. *Murdy v. Edgar* (1984), 103 Ill. 2d 384, 391.

We are therefore limited, in this opinion, to a determination of whether the decision of the Board is against the manifest weight of the evidence. (See *Murdy*, 103 Ill. 2d at 391; *Eastman Kodak Co. v. Fair Employment Practices Comm'n* (1981), 86 Ill. 2d 60, 75-76.) Only if, after reviewing the evidence in a light most favorable to the Board, we determine that no rational trier of fact could have reached the conclusion reached by the Board are we able to overturn a decision under this standard. (See *Agans v. Edgar* (1986), 142 Ill. App. 3d 1087, 1094, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.) Our review in this case, therefore, is limited.

## SUPERVISORS

The employer seeks to exclude 12 employees, alleged to be supervisors, from the bargaining unit. Challenged are the nine intermediate supervisors in the adult probation department and the three clerical supervisors employed in the social casework services department.

The Illinois Public Labor Relations Act (Ill. Rev. Stat. 1989, ch. 48, par. 1601 *et seq.*) defines "supervisor" as follows:

" 'Supervisor' is an employee whose principal work is substantially different from that of his subordinates and who has authority, in the interest of the employer, to

hire, transfer, suspend, lay off, recall, promote, discharge, direct, reward, or discipline employees, or to adjust their grievances, or to effectively recommend such action, if the exercise of such authority is not of a merely routine or clerical nature, but requires the consistent use of independent judgment. Except with respect to police employment, the term 'supervisor' includes only those individuals who devote a preponderance of their employment time to exercising such authority State supervisors notwithstanding." Ill. Rev. Stat. 1989, ch. 48, par. 1603(r).

The Illinois Public Labor Relations Act states that a bargaining unit may not contain both supervisors and nonsupervisors. (Ill. Rev. Stat. 1989, ch. 48, par. 1603(s)(1).) The purpose of such an exclusion is to ensure that "pro-union bias will not impair the supervisor's ability to apply the employer's policies to subordinates according to the employer's best interests." *City of Freeport v. Illinois State Labor Relations Board* (1990), 135 Ill. 2d 499, 506.

The definition of "supervisor" contained in the Act has, generally, been reduced to a four-part test and analyzed accordingly. Pursuant to the statute, one alleged to be a supervisor must meet all four parts in order to be excluded from the bargaining unit. The test requires that (1) the supervisory employee must perform principal work substantially different from that of her subordinates; (2) the supervisory employee must have authority to perform some or all of the 11 functions enumerated in section 3(r); (3) the supervisory employee must consistently use independent judgment in the performance of these 11 enumerated functions; and (4) generally, the supervisory employee must devote a preponderance of her time to exercising the authority to handle these 11 functions. *Village of Wheeling v. Illinois State Labor Relations Board* (1988), 170 Ill. App. 3d 934, *aff'd sub nom. City of Freeport v. Illinois State Labor Relations Board*

(1990), 135 Ill. 2d 499; *County of Peoria*, 2 Pub. Employee Rep. (Ill.) par. 2022, at 159-60, Nos. S—RC—4, S—RC—54, S—RC—56 (ISLRB April 29, 1986); *City of Burbank*, 1 Pub. Employee Rep. (Ill.) par. 2008, at 48, No. S—RC—45 (ISLRB June 6, 1985).

Although only one indicium of supervisory authority accompanied by independent judgment is sufficient to indicate supervisory status (see *City of Peru v. Illinois State Labor Relations Board* (1988), 167 Ill. App. 3d 284, 289, citing *Maine Yankee Atomic Power Co. v. NLRB* (1st Cir. 1980), 624 F.2d 347), the Board found that the individuals challenged in this appeal, while having authority to do some of the 11 functions, did not consistently use independent judgment in exercising this authority. "Independent judgment" has been defined generally by the Board to mean that "the alleged supervisor must make choices between two or more significant courses of action without substantial review by superiors." (See *St. Clair Housing Authority*, 5 Pub. Employee Rep. (Ill.) par. 2017, at 156, No. S—RC—88—108 (ISLRB March 30, 1989).) The appellate court confirmed this decision.

As the issue was phrased, the employer contests the hearing officer's findings only as to whether independent judgment is exercised in discharging supervisory functions. We accordingly limit our analysis.

### Adult Probation

First, the employer asks us to consider the intermediate supervisors employed in the department of adult probation from the bargaining unit. These employees include Diane Nelson, Mary Parilli, Mildred Baez, Kay Daly, Yolanda DeSanto, Carol Throw and Irene Violente, who are, in turn, supervised by clerical manager Dawn Annefeld. Edward Janega and Brenda Sharp, supervised by clerical manager Marcelino Gurera, are additional in-

termediate supervisors. The hearing officer found that all the intermediate supervisors perform essentially the same work.

We begin our analysis by reviewing and summarizing the findings of the hearing officer as to whether any of these employees assume any of the 11 supervisory functions while exercising independent judgment.

### Hire, Transfer, Lay Off and Recall Employees

The hearing officer found that the intermediate supervisors have no authority to hire, transfer, lay off or recall employees.

### Discipline, Suspend, and Discharge

As for the intermediate supervisors' authority to discipline, testimony elicited during the hearing indicated that the supervisors had the authority to independently issue an oral warning and, later, if the problem was not corrected, to issue a written warning. If the problem had not been corrected by a written warning, then the problem was referred to another authority. It was also clear that this authority had actually been exercised.

The hearing officer found, however, that the policy of the adult probation department requires that the intermediate supervisors report instances where the employee arrives late or leaves early more often than two times a month. The employee's pay is then automatically docked one-half day. Therefore, the officer found that this activity of tracking attendance was routine. Discipline of any kind could not be implemented without prior discussion with a clerical manager supervising the intermediate supervisors. Therefore, the hearing officer concluded that the authority to discipline was not exercised while using independent judgment.

The hearing officer likewise found that the intermediate supervisors' authority to suspend or discharge was

also limited in this fashion. The clerical managers are necessarily involved in any decision to suspend or discharge. Therefore, the hearing officer found that no independent judgment was exercised in suspending or discharging.

### Promote and Reward

The hearing officer found that there was no authority to promote exercised with independent judgment. Although the intermediate supervisors possessed the authority to recommend grade upgrades for subordinates, the clerical manager must review those recommendations and then make her own recommendation to the director. Because the clerical manager merely used these recommendations in making an ultimate recommendation, the hearing officer found that the intermediate supervisors did not have the authority to effectively recommend a promotion.

### Direct

Intermediate supervisors have the responsibility of assigning work to their subordinates. In this respect, the intermediate supervisors appear to direct employees' work assignments.

However, these assignments are made to maintain balanced workloads between employees. The hearing officer found that this assignment of tasks is merely routine, therefore, and does not involve the use of independent judgment.

The hearing officer also found that, while the intermediate supervisors handle vacation and sick leave requests, they are automatically approved and therefore do not require the consistent use of independent judgment.

### Adjust Grievances

Citing to *City of Carbondale*, 3 Pub. Employee Rep.

(Ill.) par. 2044, No. S–RC–264 (ISLRB June 2, 1989), the hearing officer found that there was no evidence that any grievance had been presented to the intermediate supervisors for their assistance in resolving employee problems.

Based upon the review of these indicia of supervisory authority as set forth in the statute, the hearing officer concluded that the intermediate supervisors were not "supervisors" within the meaning of the statute and included these employees within the bargaining unit.

## Social Casework Services

The employer also contests the hearing officer's findings with respect to the clerical supervisors employed in the department of social casework services. Specifically, the employer contests the status of Lydia Rodriguez, Rosemary Hoak, and Ruby Looney. All three employees perform essentially the same functions while supervising clerical staff working at different locations.

These employees' work was evaluated in the hearing officer's supplemental decision. The hearing officer found that the supervisors did not perform any of the 11 enumerated functions while exercising independent judgment. Again, we begin by reviewing the findings of the hearing officer.

### Transfer, Suspend, Lay Off, Recall, Promote, and Discharge

The hearing officer found that the clerical supervisors did not have authority to transfer, suspend, lay off, recall, promote or discharge any employees.

### Direct

The hearing officer found that the clerical supervisors did have authority to assign work to the employees whom they supervised. However, these supervisors as-

signed work so as to maintain a balanced workload among employees.

Moreover, although the clerical supervisors have the authority to grant time off to employees, the hearing officer found that the requests for time off were routinely granted.

Because of these findings, the hearing officer concluded that Hoak, Rodriguez and Looney did not exercise independent judgment in discharging their responsibility to direct their subordinates' work.

## Hire

While the hearing officer found that each clerical supervisor had been involved in hiring at least one individual, the officer concluded that no independent judgment was exercised in discharging this function.

In attempting to hire a new employee, the clerical supervisor conducts an interview and sometimes personally administers a typing test. The hearing officer found that the typing test had a previously set passing grade. The hearing officer further found that there was a shortage of qualified candidates to accept these entry-level jobs and, therefore, anyone who passes the typing test and does not have a criminal record is hired. Therefore, no choice need be made as to whom to hire. Because of these established standards, the clerical supervisors are not required to make decisions and thus do not exercise independent judgment.

## Adjust Grievances

None of the clerical supervisors have been involved in adjusting grievances.

## Reward

The clerical supervisors do not have authority to reward their subordinates.

## Discipline

The hearing officer found that, whenever problems such as tardiness or absenteeism occur, the clerical supervisors talk with the employees. If further action is necessary, the problem would be referred to the district supervisor. As of the hearing, the clerical supervisors had not found it necessary to refer any matters on for discipline. Therefore, the clerical supervisors, at the time of the hearing, have played no role in discipline.

The employer asks us to review these findings of the hearing officer with respect to both the intermediate supervisors of adult probation and the clerical supervisors employed in social casework services.

We are not convinced that the decision reached by the hearing officer was against the manifest weight of the evidence. Nor are we persuaded that the findings of the Board are arbitrary or capricious.

We have reviewed the record in this case. We have reviewed the cases cited by the parties to this appeal. We have reviewed the findings of the hearing officer. And although the employer may not agree with the hearing officer's findings, they can be supported by the record and by precedent, as has been noted by the appellate court in the instant case:

"The evidence established that although the intermediate supervisors have authority to recommend upgrades for subordinates, the decision to upgrade is made by the personnel director, and the intermediate supervisors cannot effectively recommend promotions or rewards. The supervisors assign work on a *pro rata* basis which is a routine function which does not require the exercise of independent judgment. (*City of Peru*, 2 Pub. Employee Rep. (Ill.) par. 2040, No. S—RC—165 (ISLRB Sept. 5, 1986).) The approval of vacation and sick leave requests is a routine, clerical function which does not involve the use of independent judgment. *City of Carbondale*, 3 Pub.

Employee Rep. (Ill.) par. 2044, No. S—RC—264 (ISLRB June 2, 1987)." 218 Ill. App. 3d at 711.

The conclusion reached by the hearing officer hinges upon a determination of what constitutes independent judgment. This is a fact-based determination to be made with a case-by-case analysis. Arguments of the employer that ask us to compare the hearing officer's decision to that reached in *St. Clair Housing Authority*, 5 Pub. Employee Rep. (Ill.) par. 2017, No. S—RC—88—108 (ISLRB March 30, 1989), or *Illinois Department of Central Management Services*, 5 Pub. Employee Rep. (Ill.) par. 2012, No. S—RC—88—76 (ISLRB April 28, 1989), are simply irrelevant, as the cases upon which the employer relies do not deal with these particular employees. In essence, the employer asks us to compare apples to oranges. This we are unwilling to do.

We therefore confirm the decision of the Board with respect to the intermediate supervisors of adult probation and the clerical supervisors of social casework services, concluding it was not against the manifest weight of the evidence.

## CONFIDENTIAL EMPLOYEES

The employer is also seeking to exclude six employees on the basis of an alleged confidential status.

A confidential employee has been defined as follows:

" 'Confidential employee' means an employee, who in the regular course of his or her duties, assists and acts in a confidential capacity to persons who formulate, determine and effectuate management policies with regard to labor relations or who in the regular course of his or her duties has authorized access to information relating to the effectuation or review of the employer's collective bargaining policies." Ill. Rev. Stat. 1989, ch. 48, par. 1603(c).

The purpose of excluding confidential employees is to keep employees from "having their loyalties divided" between their employer and the bargaining unit which represents them. The employer expects confidentiality in labor relations matters but the union may seek access to the confidential materials to gain a bargaining advantage. *City of Wood Dale*, 2 Pub. Employee Rep. (Ill.) par. 2043, at 299, No. S—RC—261 (ISLRB September 5, 1986).

Based upon section 3(c) of the Act, the Board has formulated three tests to be applied when determining whether an employee possesses confidential status. Should an employee meet the requirements established in any one of these tests, the employee is found to be confidential. See *County of Peoria*, 2 Pub. Employee Rep. (Ill.) par. 2022, at 160, Nos. S—RC—4, S—RC—54, S—RC—56 (ISLRB April 29, 1986).

The first test has been coined the "labor-nexus" test. Under this test, if an employee assists in a confidential capacity in the regular course of his or her duties a person or persons who formulate, determine or effectuate labor relations policies, then the employee holds confidential status. The person assisted by the employee must perform all three functions—formulating, determining and effectuating—before a finding of confidentiality can be made. *City of Wood Dale*, 2 Pub. Employee Rep. (Ill.) par. 2043, No. S—RC—261 (ISLRB September 5, 1986).

The "authorized access" test is the second method for determining if an individual is a confidential employee. Should the employee have authorized access to information concerning matters specifically related to the collective-bargaining process between labor and management, the employee is deemed confidential. *City of Wood Dale*, 2 Pub. Employee Rep. (Ill.) par. 2043, No. S—RC—261 (IELRB September 5, 1986); see also *West*

*Harvey-Dixmoor School District No. 147*, 2 Pub. Employee Rep. (Ill.) par. 1054, at 134, No. 85—UC—0015—C (IELRB April 8, 1986).

In *City of Burbank*, 1 Pub. Employee Rep. (Ill.) par. 2008, No. S—RC—45 (ISLRB June 6, 1985), the Board adopted a third confidential status test. This test, according to the Board, is to be applied where no collective-bargaining unit was previously in place, but it is expected that the establishment of the unit will require that confidential responsibilities be assumed by the employee. "The 'reasonable expectation' test was designed to determine, in the absence of a collective bargaining relationship, whether the onset of collective bargaining would reasonably bring the individual confidential duties." *City of Burbank*, 2 Pub. Employee Rep. (Ill.) par. 2036, at 249.

Although, at oral argument, the employer alleged that these employees should be excluded from the bargaining unit solely because of the "reasonable expectation" test, the briefs appear to analyze the issue occasionally using another of the three tests. We therefore do not confine our analysis to the "reasonable expectation" test but consider each test in turn.

Turning first to the labor-nexus test, the employer challenges the classification of Marlene O'Halleran, administrative assistant to the assistant chief probation officer in adult probation. It was noted at the supplemental hearing that Marlene O'Halleran had assumed the position of Cheryl Dix, who passed away after the first hearing had been completed.

The hearing officer found that the assistant chief probation officer, James Cunningham, does not devise or decide management policies. Cunningham's responsibilities, although he hears employee grievances and may recommend disciplinary action, do not establish that he formulates, determines and effectuates labor relations policies.

Therefore, the hearing officer found that O'Halleran does not act in a confidential capacity to one who formulates, determines and effectuates labor relations policies for the department.

The hearing officer apparently further found that O'Halleran is not a confidential employee under the authorized access test.

The hearing officer found that Cunningham chairs the deputy chief probation officer's meetings and collective-bargaining issues may be on the agenda of the meetings. Cunningham's administrative assistant, Marlene O'Halleran, attends these meetings and takes the minutes. However, the hearing officer concluded that there is no evidence that Cunningham participates in the present collective-bargaining negotiations with AFSCME. Therefore, O'Halleran does not have authorized access to collective-bargaining matters at this point in time.

Section 3(c) of the Act requires that a secretary act in a confidential capacity *in the regular course of his or her duties.* (Ill. Rev. Stat. 1989, ch. 48, par. 1603(c).) Although the employer argues that O'Halleran should be excluded because she occasionally substitutes for Gail Barta, a confidential employee, the substitution does not appear to occur in the regular course of her duties.

We decline to disturb the findings of the hearing officer with respect to O'Halleran, as our review of the record leads us to conclude that the Board's decision was not against the manifest weight of the evidence.

The employer next contests the status of Elisa Ortiz, secretary to Shirley Jones, personnel coordinator, and Thomas Brennan, assistant director of the department, both of social casework services.

The hearing officer found that neither Jones nor Brennan formulated, determined and effectuated management policies with respect to labor relations at the time of the hearing.

However, the employer argues that, because Jones has developed the disciplinary process now in place in social casework services, she formulates, determines and effectuates labor policies. As we have noted, the person assisted, Jones, must perform all three functions. It is not clear from the record, nor did the hearing officer find, that developing a disciplinary process means that Jones *effectuates* labor policies. Without more, we cannot reach a conclusion that Ortiz assists in a confidential capacity one who formulates, determines and effectuates labor policies.

The employer further intimates that Jones will later be involved in such activities, as her supervisor has delegated authority to her. If such is the case, we suggest that the employer seek reclassification of Ortiz before the Board. We will not make that determination at this point.

Both of these employees are also challenged under the reasonable expectation test. Also challenged under this test are the secretaries to Linnie Parillo, the deputy chief probation officer in charge of personnel and training, and Clotilda Kyle, the administrator of personnel and training at juvenile probation. These secretaries are Joan Kozak, Vanessa House, Diane Olvera and Sharon Williams.

The employer expressed that all of the employees would have access to confidential matters now that the office was being reorganized pursuant to this court's decision in *Orenic* and because of the additional work created by a bargaining agreement between AFSCME and the employer.

In *Orenic v. Illinois State Labor Relations Board* (1989), 127 Ill. 2d 453, this court determined that the chief judge of the circuit court was the sole employer of the employees hired in the county court system. Because of this judgment, it was alleged during the hearing that

the chief judge's office would be handling additional work related to collective-bargaining procedures.

At the time of the hearings, in 1989 and early 1990, it was unclear what impact *Orenic* would have on individual job responsibilities. Therefore, it was unclear whether certain secretaries could later have access to labor relations materials, pursuant to a restructuring of responsibilities.

In his recommended decision, the hearing officer found that no evidence was presented to show that these employees currently assumed confidential duties, as that phrase is defined in the statute. The hearing officer recommended that, if these employees were to assume such duties in the future, the employer should file for recertification of these employees. We agree that a petition for recertification should be filed at this time.

At oral argument, the employer alleged that enough information is present in the record for this court to exclude these employees, based upon the reasonable expectation test. AFSCME and the Board argue that, because the Board's order indicates that the employer can petition the Board for recertification of the unit upon a determination of new, added job responsibilities, the employer should initiate proceedings before the Board, seeking a determination that these six employees do now hold confidential responsibilities.

We agree with AFSCME. We reach this conclusion based upon the employer's own assertions. For instance, the employer states in his brief, "The 'reasonable expectation' test must be applied consistently with the greater role the judicial branch managers at the time of the hearing reasonably expected to take in labor and collective bargaining matters *and, in fact, have assumed,* now that the Chief Judge is the sole employer. (*Orenic v. ISLRB*, 127 Ill. 2d 453, 537 N.E.2d 784 (1989)." (Emphasis added.) If the managers have assumed such re-

sponsibilities, then it likewise follows that the clerical staff should have assumed corresponding duties. Yet the record is replete with references to what the judicial managers *anticipate* will be added to their responsibilities.

The reasonable expectation test should only be applied where the responsibilities may be reasonably expected but have not yet been assumed. That is not the case in the instant action. There is no evidence in the record to assist us in determining how these responsibilities have changed. Therefore, we decline to address the issue of whether these employees are confidential and instead suggest that the employer file a petition for recertification before the Board.

For this reason, we decline to determine the status of Marlene O'Halleran, Elisa Ortiz, Joan Kozak, Vanessa House, Diane Olvera or Sharon Williams at this time.

For the foregoing reasons, we affirm the decision of the appellate court. We decline to further address the issue of the confidential employees, and instead remand the decision to the Board for further factual findings.

*Appellate court affirmed;*
*remanded with directions.*

JUSTICE BILANDIC took no part in the consideration or decision of this case.

JUSTICE HEIPLE, concurring in part and dissenting in part:

I disagree with the majority's conclusion that the 12 alleged supervisors (the employees) should not be withheld from the bargaining unit. Giving the findings of the Labor Relations Board (the Board) all the deference they deserve, I still conclude that they are manifestly erroneous. Therefore, I respectfully dissent from the portion of the opinion that affirms the finding that these employees

are not supervisors and were therefore correctly included in the bargaining unit.

As noted by the majority, this court laid down the four requirements to meet the definition of "supervisor" in *City of Freeport v. Illinois State Labor Relations Board* (1990), 135 Ill. 2d 499, 506. The chief judge challenged the hearing officer's finding that, although the employees perform some supervisory functions, they do not exercise independent judgment in their performance. I agree with the chief judge that the record clearly shows the opposite; and since the rest of the factors in *Freeport* are present, the employees should be deemed supervisors and excluded from the bargaining unit.

The majority notes that a single indicium (of 11 possible indicia) of supervisory authority accompanied by independent judgment is enough to establish supervisory status. (153 Ill. 2d at 516.) I find two such indicia established by the record for the nine employees at adult probation (the probation people); the record indicates that independent judgment is used both in directing and disciplining subordinates. Further, I find one such indicium established for the three employees at social casework services (the caseworkers), who also use independent judgment in disciplining subordinates.

The record clearly establishes that the probation people use independent judgment in directing their subordinates. The Board has defined the authority to direct as possessing "the authority to assign work to subordinates and direct them in the performance of their duties." (*Illinois Department of Central Management Services*, 5 Pub. Employee Rep. (Ill.) par. 2012, at X—132, No. S—RC—88—76 (ISLRB April 28, 1989).) The majority concedes that the probation people have the responsibility of assigning work to their subordinates. Following the hearing officer's lead, however, they classify this as

merely maintaining balanced workloads among subordinates.

An examination of the record reveals, however, that in addition to monitoring workload, the probation people prioritize assignments and assign specific tasks when necessary. They also hold monthly meetings to discuss performance and to address problems. There are no formal guidelines for these tasks, and they require the exercise of independent judgment. As in *St. Clair Housing Authority*, 5 Pub. Employee Rep. (Ill.) par. 2017, No. S—RC—88—108 (ISLRB Mar. 30, 1989), where property managers were found to use independent judgment to direct maintenance workers, the probation people "clearly have a wide range of options regarding what type of work will be performed and the priority such work will receive. Furthermore, their decisions are not reviewed in any way by their superiors." Like the property managers, the probation people "have authority to direct their subordinates with the use of independent judgment." 5 Pub. Employee Rep. (Ill.) par. 2017, at X—156.

In addition, the probation people use independent judgment in disciplining their subordinates. Everyone agrees that they have independent authority to issue oral and written reprimands, and that this authority is actually exercised. (153 Ill. 2d at 517.) However, the hearing officer ruled that this is not enough; since any discipline beyond these reprimands requires a discussion with a clerical manager, it cannot be said that these people disciplined with independent judgment.

This is contrary to previous decisions by both this court and the Labor Relations Board, where the ability to reprimand was sufficient to establish independent judgment in disciplining subordinates. In *City of Freeport v. Illinois State Labor Relations Board* (1990), 135 Ill. 2d 499, 521, this court examined whether certain supervisory functions performed by police officers required

the exercise of independent judgment. This court concluded that the officers did not use independent judgment when they issued certain suspensions for tardiness, since the suspensions were required whenever a subordinate was 30 minutes late. However, independent judgment was required for issuing written reprimands, since discretion was involved. "[W]hen the ranking officers exercise their authority to issue written reprimands and to recommend disciplinary suspension, they ordinarily must choose between two or more significant courses of action. Accordingly, the ranking officers consistently use independent judgment when exercising their authority to discipline patrol officers." *City of Freeport*, 135 Ill. 2d at 521.

The Board has adopted similar findings. In *Illinois Department of Central Management Services & Revenue*, 4 Pub. Employee Rep. (Ill.) par. 2027, No. S—RC—88—1 (ISLRB May 22, 1988), the Board adopted a hearing officer's conclusion that independent judgment was used when the supervisors had the authority to discipline by issuing oral reprimands. "The Supervisors have the authority to issue oral reprimands. Although they do so infrequently, the authority has been exercised, approval was not needed and a written note was placed in the agent's personal file. *** I therefore find that the Supervisors are supervisors within the meaning of Section 3(r) of the Act." 4 Pub. Employee Rep. (Ill.) par. 2027, at X—165.

Similarly, in *St. Clair Housing Authority*, 5 Pub. Employee Rep. (Ill.) par. 2017, No. S—RC—88—108 (ISLRB Mar. 30, 1989), property managers who issued oral and written reprimands were found to use independent judgment in their authority to discipline. "Property Managers have authority to discipline through oral and written reprimand. Although exercised infrequently, discipline was accomplished without prior approval and

resulted in written notes being placed in the personnel files. Since Managers may issue reprimands without consultation or approval from their superiors, I find that Property Managers have the authority to discipline with the use of their independent judgment." 5 Pub. Employee Rep. (Ill.) par. 2017, at X—156.

In the instant case, the probation people have discretion similar to the officers in *Freeport* and the managers in *St. Clair*, and have more discretion than those in *Central Management Services*. They certainly "choose between two or more significant courses of action," the dispositive factor in *City of Freeport*, 135 Ill. 2d at 521. Based on the Board's previous holdings, as well as our own, a conclusion that the probation people do not use independent judgment in disciplining their subordinates is contrary to law and clearly erroneous. Therefore, the probation people should be deemed supervisors, and withheld from the bargaining unit.

The caseworkers also use independent judgment in disciplining subordinates. Social casework services uses a five-part disciplinary plan. The caseworkers meet with the employee at the early stages of this plan and make a decision whether the problem can be resolved by merely talking with the employee, or whether further action must be taken by a higher authority. The caseworkers use independent judgment when they decide whether the situation requires further attention. The caseworkers "choose between two or more significant courses of action" (*City of Freeport*, 135 Ill. 2d at 521), and the conclusion that they do not meet the definition of supervisor is clearly erroneous.

Based on the foregoing, these 12 employees should be deemed supervisors. I dissent from the majority's holding that they are not.

I also express my doubts as to the correctness of the hearing officer's finding concerning the six alleged confi-

dential employees. As the majority correctly notes, these six women are secretaries to potentially confidential employees, but the hearing officer found that they were not themselves confidential.

It seems to me that these women are probably confidential employees. Certainly, if the people they work for satisfy the definition of "confidential employee," then the women themselves are; the "authorized access test," which indicates that people with access to matters related to the collective-bargaining process are themselves confidential (153 Ill. 2d at 523-24), would certainly apply to secretaries. As anyone in the business world knows, a secretary necessarily has access to just about anything her superior does. One would be hard-pressed to come up with a scenario where the authorized access test would not apply to a confidential employee's secretary.

However, I agree with the majority that the correct procedural route to determine the status of these women is for the chief judge to repetition for a finding of confidential status. This is because the positions of these women have changed greatly since the hearing officer made the findings at issue; further, many of the chief judge's arguments rely on the secretaries' anticipated responsibilities, rather than responsibilities the women presently hold. I therefore concur in the part of the opinion that leaves for another day the determination of the status of these six women.

CHIEF JUSTICE MILLER joins in this partial concurrence and partial dissent.